Paul B. Barton, OSB No. 100502
paul@olsenbarton.com
OLSEN BARTON LLC
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: (503) 468-5573
Fax: (503) 820-2933

Mason Barney*
mbarney@sirillp.com
Tyler J. Bean*
tbean@sirillp.com
Sonjay C. Singh*
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
*pro hac vice to be filed
*Attorneys for Plaintiffs, individually and
on behalf of all others similarly situated*

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **K.P.**, **J.L.**, **A.H.**, **B.H.**, **F.Q.**, and **J.C.**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**COURIER PLUS, INC. d/b/a DUTCHIE, GARDEN REMEDIES, INC., NEW ENGLAND TREATMENT ACCESS, LLC, MLH EXPLORATIONS, LLC d/b/a ETHOS CANNABIS, CURALEAF HOLDINGS, INC.**, and **HERBERY OUTFITTERS LLC**,<br><br>Defendants. | Case No. 3:25-cv-02412-YY<br><br>**CORRECTED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CORRECTED COMPLAINT – 1

## CLASS ACTION COMPLAINT

Plaintiffs K.P., J.L., A.H., B.H.,  F.Q. and J.C. (collectively, "Plaintiffs"), individually and on behalf of all similarly situated persons, allege the following against Courier Plus, Inc. d/b/a Dutchie ("Dutchie"); and Garden Remedies, Inc. ("Garden Remedies"), New England Treatment Access LLC ("NETA"), MLH Explorations, LLC d/b/a Ethos Cannabis ("Ethos"), Curaleaf Holdings, Inc. ("Curaleaf"), and Herbery Outfitters LLC ("Herbery") (collectively, the "Dispensary Defendants" and, together with Dutchie, the "Defendants") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by their counsel and review of public documents as to all other matters:

## I.    INTRODUCTION

1.    Information concerning an individual's health is among the most sensitive, and closely guarded information in our society. The unwanted disclosure of such information can be enormously harmful. It can result in discrimination in the workplace, and denial of insurance coverage. And, if people are unable to believe that their Sensitive Information will be kept confidential, they are much less likely to seek medical care when they need it most.

2.    This sensitivity is particularly acute with regards to health information relating to medical marijuana. Indeed, surveys routinely show that medical marijuana patients experience

CORRECTED COMPLAINT – 2

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

stigma and feelings of shame, and make efforts to hide their medical marijuana usage from friends and loved ones.[1]

3.      Unfortunately, unbeknownst to Plaintiff and other visitors to the Dispensary Defendants' websites, their private personal and health information was not actually being kept private. Instead, through Dutchie's e-commerce platform, Defendants collected and transmitted personally identifiable, Sensitive Information pertaining to Plaintiffs, Class Members and other customers, including the fact that they have a medical marijuana card; have purchased medical and/or recreational marijuana; and the specific cannabis products that they have purchased (collectively, "Sensitive Information"), to unauthorized third parties, including Alphabet, Inc. ("Google"),  through the use of surreptitious online tracking tools.

4.      Online advertising giants, like Google, compile as much information as possible about American consumers, including information relating to the most private aspects of their lives. This information is then used to fuel for a massive, targeted advertising enterprise.

5.      Thus, any information about a person captured by these online behemoths can be used to stream ads to that person, among other uses. If Google receives information that a person is a consumer of medical marijuana, it will collect that information and allow its clients to use that information to stream ads related to related healthcare and cannabis products.

---

[1] *See* Olivia Cordingley, Elizabeth Salerno Valdez, Samantha Pagán, Emily Lincoln, Janna Ataiants & Stephen Lankenau, *Multi-level Stigma as a Barrier to Accessing Medical Cannabis for Parents in Pennsylvania*, APHA 2025 ANNUAL MEETING AND EXPO (2025), *available online at*: https://apha.confex.com/apha/2025/meetingapp.cgi/Paper/568079; *see also* Travis D Satterlund, Juliet P Lee & Roland S Moore, *Stigma Among New York's Medical Marijuana Patients*, J. Psychoactive      Drugs      (2015),      *available      online      at*: https://pmc.ncbi.nlm.nih.gov/articles/PMC4341951/.

CORRECTED COMPLAINT – 3

6.    Google offers its clients' website operators access to its proprietary suites of marketing, advertising, and customer analytics software, including Google Analytics, Google AdSense and Google Tag Manager (collectively, the "Business Tools"). Armed with these Business Tools, website operators can leverage Google's enormous database of consumer information for the purposes of deploying targeted advertisements, performing minute analyses of their customer bases, and identifying new market segments that may be exploited.

7.    But, in exchange for access to these Business Tools, website operators install Google's surveillance software on their website (the "Tracking Tools"), including 'tracking pixels' ("Pixels") and third-party 'cookies' that capture sensitive, personally identifiable information provided to the website operator by its website users. This sensitive information can include a unique identifier that Google uses to identify that user, regardless of what computer or phone is used to access the website.  The Tracking Tools can also capture and share other information like the specific webpages visited by a website user, items added to an online shopping cart by a website user, information entered into an online form by a website user, and the device characteristics of a website user's phone or computer.

8.    In essence, when website operators use Google's Business Tools, they choose to participate in Google's mass surveillance network and, in turn, benefit from Google's collection of user data at the expense of their website user's privacy.

9.    Defendants are some of the companies that have chosen to prioritize its marketing efforts and profits over its customers' privacy by installing Google's Tracking Tools on its websites.

10.    The Dispensary Defendants operate as cannabis retailers in the States of Massachusetts, Pennsylvania, Washington, and New York. Through the Dispensary Defendants'

CORRECTED COMPLAINT – 4

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

websites,[2] visitors can order their cannabis products for pick-up at one of its multiple storefronts or for delivery. Defendant NETA also partners with medical doctors specializing in medical marijuana, and its website visitors can schedule an appointment with these doctors for the purpose of obtaining a medical marijuana card directly through the NETA website.[3]

11.     Dutchie is a technology company that specializes in providing solutions for the cannabis industry. With over 6,500 dispensary partners, Dutchie claims to process over $22 billion in cannabis sales annually.[4]

12.     Dutchie advertises its platform to dispensaries as:

> [A]n all-on-one technology platform powering the cannabis industry with Point of Sale, E-commerce, Payments, and Loyalty & Marketing. Through our technology, we're helping cannabis businesses start, operate, and grow with confidence. With software that simplifies their operations, our customers can focus on what matters most—bringing the benefits of cannabis safely to consumers.[5]

13.     Dutchie's clients, including the Dispensary Defendants, install Dutchie's platform directly onto their retail websites. Through the Dutchie platform (the "Platform"), customers can purchase cannabis products, including medical marijuana, for pickup or delivery directly from their local dispensary. But, wherever it is installed, the Platform collects and transmits the Sensitive

---

[2] Defendant Garden Remedies operates the website, www.gardenremedies.com. Defendant NETA operates the website, www.netacare.org. Defendant Ethos operates the website, www.ethoscannabis.com. Defendant Curaleaf operates the website www.curaleaf.com. Defendant Herbery operates the website www.theherberynw.com.

[3] *Become a Med Patient*, NETA, www.netacare.org/medical-marijuana-patient-massachusetts#benefits (last visited Dec. 16, 2025).

[4] *About Dutchie*, DUTCHIE, business.dutchie.com/about#:~:text=Dutchie%20is%20an%20all-in-one%20technology%20platform%20powering%20the,cannabis%20businesses%20start%2C%20operate%2C%20and%20grow%20with%20confidence (last visited Dec. 16, 2025).

[5] *Id.*

CORRECTED COMPLAINT – 5

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

Information provided by customers when purchasing cannabis products to third parties, including Google, instantaneously and contemporaneously through the Tracking Tools.

14.     Plaintiffs and Class Members used the Platform and had their personal Sensitive Information tracked by Defendants using the Tracking Tools. However, Defendants **never** obtained authorization from Plaintiff or Class Members to share their Sensitive Information with third parties. At all times relevant to this action, Plaintiff and Class Members gave no informed consent for information about their Sensitive Information to be transmitted to the third parties, including the largest advertiser and compiler of user information.

15.     Health information, including information related to medical cannabis treatment, is highly regulated by various state laws—including through Massachusetts General Laws ch 94i § 3; the Pennsylvania Medical Marijuana Act ("PMMA"), 35 Pa. Stat. Ann. § 10231.101, *et seq.*; and the New York Marihuana Regulation and Taxation Act ("MHRTA"), NY CLS Cannabis § 30, *et seq*., the Washington Cannabis Patient Protection Act ("CPPA"); Wash. Rev. Code Ann. § 69.69.51, *et seq.*; and the Washington My Health My Data Act ("MHMDA"), Wash. Rev. Code Ann. § 19.373.005, *et seq.*—all of which prohibit the disclosure of medical marijuana-related health information without explicit, informed consent. Accordingly, Defendants' disclosure of Plaintiffs' and Class Members' Sensitive Information constitutes a violation of these state laws.

16.     As a result of Defendants' conduct, Plaintiffs and Class Members have suffered numerous injuries, including: (i) invasion of medical privacy; (ii) lack of trust in communicating with medical providers; (iii) emotional distress and heightened concerns related to the release of Sensitive Information to third parties, (iv) loss of benefit of the bargain; (v) diminution of value of the Sensitive Information; (vi) statutory damages and (vii) continued and ongoing risk to their Sensitive Information.

CORRECTED COMPLAINT – 6

17.     Therefore, Plaintiffs seek, on behalf of themselves and a class of similarly situated persons, to remedy these harms and assert the following statutory and common law claims against Defendant: Invasion of Privacy – Intrusion Upon Seclusion; Breach of Confidence; Breach of Fiduciary Duty; Negligence; Breach of Implied Contract; Unjust Enrichment; violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), *et seq.*; violations of New York General Business Law § 349; and violations of the Massachusetts Right to Privacy Law, Mass. Ann. Laws Ch. 214, § 1b.

## II.     PARTIES

### *Plaintiff K.P.*

18.     Plaintiff K.P. is a citizen of the State of Massachusetts, residing in Middlesex County, and brings this action both in an individual capacity, and on behalf of all others similarly situated.

19.     Plaintiff K.P. holds a valid medical marijuana card issued under Massachusetts law.

20.     In or around 2024, Plaintiff K.P. utilized the Platform on her personal electronic device to purchase medical marijuana from a Massachusetts marijuana dispensary operated by Defendant Garden Remedies on several occasions.

21.     Unbeknownst to Plaintiff K.P., the Platform transmitted the Sensitive Information that she input to complete her purchase to unauthorized third parties, including the fact that she is a medical marijuana patient and the specific medical marijuana products that she purchased.

22.     Plaintiff K.P. never authorized Defendants to disclose any aspect of her communications with Defendants through the Platform to third parties, including the Sensitive Information that she provided through the Platform.

CORRECTED COMPLAINT – 7

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

23.     On every occasion that she visited the Platform, Plaintiff K.P. possessed an account with Google, and she accessed the Platform while logged into her Google account on the same device.

**Plaintiff J.L.**

24.     Plaintiff J.L. is a citizen of the State of Massachusetts, residing in Worcester County, and brings this action both in an individual capacity, and on behalf of all others similarly situated.

25.     Plaintiff J.L. holds a valid medical marijuana card issued under Massachusetts law.

26.     In or around 2024, Plaintiff J.L. utilized the Platform on her personal electronic device to purchase medical marijuana from a Massachusetts marijuana dispensary operated by Defendant NETA on several occasions.

27.     Unbeknownst to Plaintiff J.L., the Platform transmitted the Sensitive Information that she input to complete her purchase to unauthorized third parties, including the fact that she is a medical marijuana patient and the specific medical marijuana products that she purchased.

28.     Plaintiff J.L. never authorized Defendants to disclose any aspect of her communications with Defendants through the Platform to third parties, including the Sensitive Information that she provided through the Platform.

29.     On every occasion that she visited the Platform, Plaintiff J.L. possessed an account with Google, and she accessed the Platform while logged into her Google account on the same device.

**Plaintiff A.H.**

30.     Plaintiff A.H. is a citizen of the State of Pennsylvania, residing in Luzerne County, and brings this action both in an individual capacity, and on behalf of all others similarly situated.

CORRECTED COMPLAINT – 8

31.     In or around 2025, Plaintiff A.H. utilized the Platform on her personal electronic device to purchase medical marijuana from a Pennsylvania marijuana dispensary operated by Defendant Ethos on several occasions.

32.     Plaintiff A.H. holds a valid medical marijuana card issued under Pennsylvania law.

33.     Unbeknownst to Plaintiff A.H., the Platform transmitted the Sensitive Information that she input to complete her purchase to unauthorized third parties, including the fact that she is a medical marijuana patient and the specific medical marijuana products that she purchased.

34.     Plaintiff A.H. never authorized Defendants to disclose any aspect of her communications with Defendants through the Platform to third parties, including the Sensitive Information that she provided through the Platform.

35.     On every occasion that she visited the Platform, Plaintiff A.H. possessed an account with Google, and she accessed the Platform while logged into her Google account on the same device.

### Plaintiff B.H.

36.     Plaintiff B.H. is a citizen of the State of Pennsylvania, residing in Luzerne County, and brings this action both in an individual capacity, and on behalf of all others similarly situated.

37.     Plaintiff B.H. holds a valid medical marijuana card issued under Pennsylvania law.

38.     In or around 2025, Plaintiff B.H. utilized the Platform on his personal electronic device to purchase medical marijuana from a Pennsylvania marijuana dispensary operated by Defendant Ethos on multiple occasions.

39.     Unbeknownst to Plaintiff B.H., the Platform transmitted the Sensitive Information that he input to complete his purchase to unauthorized third parties, including the fact that's he is a medical marijuana patient and the specific medical marijuana products that he purchased.

CORRECTED COMPLAINT – 9

40.     Plaintiff B.H. never authorized Defendants to disclose any aspect of his communications with Defendants through the Platform to third parties, including the Sensitive Information that he provided through the Platform.

41.     On every occasion that he visited the Platform, Plaintiff B.H. possessed an account with Google, and he accessed the Platform while logged into his Google account on the same device.

***Plaintiff F.Q.***

42.     Plaintiff F.Q. is a citizen of the State of New York, residing in Ulster County, and brings this action both in an individual capacity, and on behalf of all others similarly situated.

43.     Plaintiff F.Q. holds a valid medical marijuana card issued under New York law.

44.     In or around 2025, Plaintiff F.Q. utilized the Platform on her personal electronic device to purchase medical marijuana from a New York marijuana dispensary operated by Defendant Curaleaf on several occasions.

45.     Unbeknownst to Plaintiff F.Q., the Platform transmitted the Sensitive Information that she input to complete her purchase to unauthorized third parties, including the fact that she is a medical marijuana patient and the specific medical marijuana products that she purchased.

46.     Plaintiff F.Q. never authorized Defendants to disclose any aspect of her communications with Defendants through the Platform to third parties, including the Sensitive Information that she provided through the Platform.

47.     On every occasion that she visited the Platform, Plaintiff F.Q. possessed an account with Google, and she accessed the Platform while logged into her Google account on the same device.

///

CORRECTED COMPLAINT – 10

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

*Plaintiff J.C.*

48.    Plaintiff J.C. is a citizen of the State of Washington, residing in Clark County, and brings this action both in an individual capacity, and on behalf of all others similarly situated.

49.    Plaintiff J.C. holds a valid medical marijuana card issued under Washington law.

50.    In or around 2025, Plaintiff J.C. utilized the Platform on her personal electronic device to purchase medical marijuana from a Washington marijuana dispensary operated by Defendant Herbery on several occasions.

51.    Unbeknownst to Plaintiff J.C., the Platform transmitted the Sensitive Information that she input to complete her purchase to unauthorized third parties, including the fact that she is a medical marijuana patient and the specific medical marijuana products that she purchased.

52.    Plaintiff J.C. never authorized Defendants to disclose any aspect of her communications with Defendants through the Platform to third parties, including the Sensitive Information that she provided through the Platform.

53.    On every occasion that she visited the Platform, Plaintiff J.C. possessed an account with Google, and she accessed the Platform while logged into her Google account on the same device.

*Defendant Dutchie*

54.    Defendant Courier Plus, Inc. d/b/a Dutchie is a corporation incorporated in the State of Delaware with its principal place of business at 2783 NW Lolo Drive, Suite 130, Bend, OR, in Deschutes County.

///

///

///

CORRECTED COMPLAINT – 11

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

*Defendant Garden Remedies*

55.     Defendant Garden Remedies, Inc. is a for-profit corporation incorporated in the State of Massachusetts with its principal place of business at 697 Washington Street, Newton, MA, in Middlesex County.

*Defendant NETA*

56.     Defendant New England Treatment Access, Inc. is a Massachusetts limited liability company with its principal place of business at 5 Forge Parkway, Franklin, MA, in Norfolk County.

*Defendant Ethos*

57.     Defendant MLH Explorations, LLC d/b/a Ethos Cannabis is a Pennsylvania limited liability company with its principal place of business at 308 E Lancaster Ave, Wynnewood, PA, in Montgomery County.

*Defendant Curaleaf*

58.     Defendant Curaleaf Holdings, Inc. is a Canadian for-profit corporation with its principal place of business located at 290 Harbor Drive, Stamford, CT, in Fairfield County.

*Defendant Herbery*

59.     Defendant Herbery Outfitters LLC is a Washington Limited Liability Company with its principal place of business at [6018 NE St. Johns Road, Vancouver, WA, in Clark County.

### III.    JURISDICTION AND VENUE

60.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because Plaintiffs and many putative class members are citizens of a different state than some or all Defendants. Additionally, this Court also has subject matter

CORRECTED COMPLAINT – 12

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

jurisdiction over this action under 28 U.S.C. § 1331 because this Complaint asserts a claim for violation of federal law, specifically, the ECPA, 18 U.S.C. § 2511. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

61. This Court has personal jurisdiction over Defendants because Defendant Dutchie is headquartered in this judicial district.

62. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this action occurred in this judicial district, including decisions made by Defendant Dutchie's governance and management personnel or inaction by those individuals that led to the unauthorized sharing of Plaintiffs' and Class Members' Sensitive Information; Defendant Dutchie's principal place of business is located in this District; Defendants collect and redistribute Class Members' Sensitive Information in this District; and Defendants caused harm to Class Members residing in this District.

///

///

///

///

///

///

///

///

///

///

CORRECTED COMPLAINT – 13

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

IV.    FACTUAL ALLEGATIONS

A.    DEFENDANTS' USE OF THIRD-PARTY TRACKING TOOLS

    i.    Google's Mass Advertising Surveillance Operation

63.    Google is the largest digital advertiser in the country, accounting for 26.8-percent of the total digital advertising revenue generated in the United States.[6] In 2023, Google's advertising revenue of $238 billion accounted for 77-percent of its total revenue for the year.[7]

64.    Google advertises Google Analytics and other Business Tools to website operators, like Defendants, claiming they will allow the operator to "[u]nderstand [their] site and app users," "check the performance of [their] marketing," and "[g]et insights only Google can give."[8] But, in order for website operators to get information from Google Analytics about their website's visitors, they must allow data collection through installation of Google's Tracking Tools on their website.[9]

65.    Indeed, on its *Privacy & Terms* page, Google admits that it collects information from third party websites, stating that "[m]any websites and apps use Google services to improve

---

[6] *Share of major ad-selling companies in digital advertising revenue in the United States*, STATISTA (May 2024), https://www.statista.com/statistics/242549/digital-ad-market-share-of-major-ad-selling-companies-in-the-us-by-revenue/#:~:text=In%202023%2C%20Google%20accounted%20for,21.1%20and%2012.5%20percent%2C%20respectively https://www.scientificamerican.com/article/7-in-10-smartphone-apps-share-your-data-with-third-party-services/ (last visited Dec. 16, 2025).

[7] Florian Zandt, *Google's Ad Revenue Dwarfs Competitors*, STATISTA (Sep. 10, 2024), https://www.statista.com/chart/33017/annual-advertising-revenue-of-selected-tech-companies-offering-search-solutions/#:~:text=Online%20advertising&text=Alphabet%2C%20the%20company%20behind%20the,overall%20revenue%20this%20past%20year (last visited Dec. 16, 2025).

[8] *Welcome to Google Analytics*, GOOGLE, https://analytics.google.com/analytics/web/provision/?authuser=0#/provision (last visited Dec. 16, 2025).

[9] *See* Aaron Ankin & Surya Matta, *The High Privacy Cost of a "Free" Website*, THE MARKUP, https://themarkup.org/blacklight/2020/09/22/blacklight-tracking-advertisers-digital-privacy-sensitive-websites (last visited Dec. 16, 2025).

CORRECTED COMPLAINT – 14

their content and keep it free. When they integrate our services, these sites and apps share information with Google."[10]

66.     Google also admits that it uses the information collected from third party websites, such as the Platform, to sell targeted advertising, explaining to users that, "[f]or example, a website that sells mountain bikes might use Google's ad services. After you visit that site, you could see an ad for mountain bikes on a different site that shows ads served by Google."[11]

67.     While Google admits that it collects information from third-party websites through the Tracking Tools, it does not provide, nor could it provide, a publicly available list of every webpage on which its Tracking Tools are installed. As such, the vague descriptions of Google's data collection practices referenced above could not give Plaintiffs and Class Members any reason to think that Defendants were part of Google's surveillance network. Moreover, as Defendants do not disclose their use of Google's Tracking Tools, Plaintiffs and Class Members could not have been reasonably expected to review any of Google's privacy statements in connection with their use of the Platform.

68.     Google aggregates the user information that it collects from third-party websites into 'advertising profiles' consisting of all of the data that it has collected about a given user.[12] With these advertising profiles, Google can sell hyper-precise advertising services, allowing its clients to target internet users based on combinations of their location, age, race, interests, hobbies,

---

[10] *Privacy & Terms – How Google uses information from sites or apps that use our services*, GOOGLE, https://policies.google.com/technologies/partner-sites (last visited Dec. 16, 2025).

[11] *Id.*

[12] Bennett Cyphers & Gennie Gebhart, *Behind the One-Way Mirror: A Deep Dive Into the Technology of Corporate Surveillance*, ELECTRONIC FRONTIER FOUNDATION (2019), *available online at*: https://www.eff.org/files/2019/12/11/behind_the_one-way_mirror-a_deep_dive_into_the_technology_of_corporate_surveillance_0.pdf.

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

life events (e.g., recent marriages, graduation, or relocation), political affiliation, education level, home ownership status, marital status, household income, type of employment, use of specific apps or websites, and more.[13]

69.     Google's surveillance of individual's internet usage is ubiquitous. In 2017, Scientific American reported that over 70-percent of smartphone apps report "personal data to third-party tracking companies like Google,"[14] and Google trackers are present on 74-percent of all web traffic.

70.     Moreover, as in this case, the data collected by Google often pertains to the most personal and sensitive aspects of an individual's life. For example:

a)     93-percent of pornography websites allow third parties, including Google, to collect their user's browsing habits.[15] In fact, Google advertising trackers were found on 73-percent of pornography websites.[16]

---

[13]    *About audience segments*, GOOGLE ADS, https://support.google.com/google-ads/answer/2497941?hl=en#zippy=%2Cin-market-segments%2Caffinity-segments%2Clife-events%2Cdetailed-demographics (last visited Dec. 16, 2025).

[14] Narseo Vallina-Rodriguez & Srikanth Sundaresan*, 7 in 10 Smartphone Apps Share Your Data with Third-Party Services*, SCIENTIFIC AMERICAN (May 30, 2017), https://www.scientificamerican.com/article/7-in-10-smartphone-apps-share-your-data-with-third-party-services/ (last visited Dec. 16, 2025).

[15] Elena Maris, Timothy Libert & Jennifer R. Henrichsen, *Tracking sex: The implications of widespread sexual data leakage and tracking on porn websites*, NEW MEDIA & SOCIETY (2020), *available online at*: https://journals.sagepub.com/doi/10.1177/1461444820924632.

[16] *Id*.

CORRECTED COMPLAINT – 16

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

b)    81-percent of the most popular mobile apps for managing depression and quitting smoking allowed Facebook and/or Google to access subscriber information, including health diary entries and self-reports about substance abuse.[17]

c)    Twelve of the largest pharmacy providers in the United States send information regarding user's purchases of products such as pregnancy tests, HIV tests, prenatal vitamins, and Plan B to online advertisers.[18] For example, when an online shopper searches for a pregnancy test, views the product page for a pregnancy test, or adds a pregnancy test to their online shopping cart on Kroger's website, that information is transmitted to Google.[19]

71.    This monumental, invasive surveillance of Americans' internet usage and resulting violation of their privacy is not accidental. As Google's then-CEO, Eric Schmit, admitted in 2010: "We know where you are. We know where you've been. We can more or less know what you're thinking about."[20]

---

[17] Kit Huckvale, John Torous & Mark E. Larsen, *Assessment of the Data Sharing and Privacy Practices of Smartphone Apps for Depression and Smoking Cessation*, JAMA NETWORK OPEN (2019), *available online at*: https://pubmed.ncbi.nlm.nih.gov/31002321/.

[18] Darius Tahir & Simon Fondrie-Teitler*, Need to Get Plan B or an HIV Test Online? Facebook May Know About It*, THE MARKUP (June 30, 2023), https://themarkup.org/pixel-hunt/2023/06/30/need-to-get-plan-b-or-an-hiv-test-online-facebook-may-know-about-it (last visited Dec. 16, 2025).

[19] Jon Keegan, *Forget Milk and Eggs: Supermarkets Are Having a Fire Sale on Data About You*, THE MARKUP (Feb. 16, 2023), https://themarkup.org/privacy/2023/02/16/forget-milk-and-eggs-supermarkets-are-having-a-fire-sale-on-data-about-you (last visited Dec. 16, 2025).

[20] Andrew Orlowski, *Google's Schmidt: We know what you're thinking*, THE REGISTER (Oct. 4, 2020), https://www.theregister.com/2010/10/04/google_ericsims/ (last visited Dec. 16, 2025).

CORRECTED COMPLAINT – 17

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

72.     In fact, Google values user information so highly that it provides its Business Tools to many website operators for free, all to expand its surveillance apparatus.[21]

73.     When website operators, like Defendants, make use of Google's Business Tools, they are essentially choosing to participate in Google's mass surveillance network and, in return, they benefit from Google's collection of user data at the expense of their website users' privacy. For example, Google rewards website operators for providing it with user information by granting such website operators access to its Analytics platform, which then leverages demographic data collected by Google to provide detailed analyses of the website's user base.[22]

74.     Unfortunately, it is usually the case that a website operator's use of third-party tracking software is not disclosed whatsoever in its privacy policy.[23] And even where the use of such third-party software is disclosed, such disclosures are often hidden and cloaked in such confusing, technical and overly legal language as to be indecipherable to the typical internet user.[24]

75.     Moreover, for even a conscientious internet user, the massive volume of privacy policies encountered through routine internet use makes reviewing each and every one practically impossible. According to one study, it would take the average internet user 244 hours – or 30.5 working days – to read the privacy policy of every new website that they visited in a single year.[25]

---

[21] *Analytics Overview*, GOOGLE, https://marketingplatform.google.com/about/analytics/ (last accessed Mar. 7, 2025) ("Google Analytics gives you the tools, free of charge"),

[22] *Google Marketing Platform – Features*, GOOGLE, https://marketingplatform.google.com/about/analytics/features/ (last visited Dec. 16, 2025).

[23] *See* Woodrow Hartzog, *Privacy's Blueprint*, 60-67 (Harvard University Press 2018) (detailing deficiencies with online privacy policies).

[24] *Id*.

[25] Aleecia M. McDonald & Lorrie Faith Cantor, *The Cost of Reading Privacy Policies*, I/S: A JOURNAL OF LAW AND POLICY FOR THE INFORMATION SOCIETY (2008), *available online at*: https://lorrie.cranor.org/pubs/readingPolicyCost-authorDraft.pdf.

CORRECTED COMPLAINT – 18

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

ii.     **Pixels Can Record Almost Every Interaction Between a User and a Website**

76.     In order to use Google's Business Tools, Defendants installed Google's Tracking Tools, including tracking Pixels, onto the Platform.

77.     Pixels are one of the tools used by website operators to track user behavior. As the Federal Trade Commission ("FTC") explains, a Pixel is:

> [A] small piece of code that will be placed into the website or ad and define [the Pixel operator's] tracking goals such as purchases, clicks, or pageviews…
>
> Pixel tracking can be monetized several ways. One way to monetize pixel tracking is for companies to use the tracking data collected to improve the company's own marketing campaigns…Another is that companies can monetize the data collected by further optimizing their own ad targeting systems and charging other companies to use its advertising offerings.[26]

78.     Pixels can collect a shocking amount of information regarding an individual's online behavior—including the webpages viewed by the user, the amount of time spent by the user on specific webpages, the buttons and hyperlinks that the user clicks while using a website, the items that the user adds to an online shopping cart, the purchases that a user makes through an online retailer, the text entered by the user into a website search bar, and even the information provided by the user on an online form—all transmitted in real-time as the user navigates a website.[27]

---

[26] *Lurking Beneath the Surface: Hidden Impacts of Pixel Tracking*, FEDERAL TRADE COMMISSION – OFFICE OF TECHNOLOGY (Mar. 6, 2023), https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2023/03/lurking-beneath-surface-hidden-impacts-pixel-tracking (last visited Dec. 16, 2025).

[27] *See id.*; *How does retargeting on Facebook help your business?*, META, https://www.facebook.com/business/goals/retargeting (last visited Dec. 16, 2025); Tom Kemp, *"Oops! I Did It Again" … Meta Pixel Still Hoovering Up Our Sensitive Data*, MEDIUM, https://tomkemp00.medium.com/oops-i-did-it-again-meta-pixel-still-hoovering-up-our-sensitive-data-f99c7b779d47#_ftn1 (last visited Dec. 16, 2025).

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

79.     But most internet users are completely unaware that substantial information about their internet usage is being collected through tracking Pixels. The FTC warns that:

> Traditional controls such as blocking third party cookies may not entirely prevent pixels from collecting and sharing information. Additionally, many consumers may not realize that tracking pixels exist because they're invisibly embedded within web pages that users might interact with…Academic and public reporting teams have found that thousands of the most visited webpages have pixels and other methods that leak personal information to third parties.[28]

### iii.     The Pixels Installed on the Platform Transmit Personally Identifiable Information and Protected Health Information to Google

80.     Every website is hosted by a computer "server" that holds the website's contents.

81.     To access a website, individuals use "web browsers." Web browsers are software applications that allow consumers to navigate the web and view and exchange electronic information and communications over the Internet.  Each "client device" (such as computer, tablet, or smartphone) accesses web content through a web browser (such as Google's Chrome, Mozilla's Firefox, Apple's Safari, or Microsoft's Edge).

82.     Communications between a website server and web browser consist of Requests and Responses. Any given browsing session may consist of hundreds or even thousands of individual Requests and Responses. A web browser's Request essentially asks the website to provide certain information, such as the contents of a given webpage when the user clicks a link, and the Response from the website sends back the requested information – the web pages' images, words, buttons, and other features that the browser shows on the user's screen as they navigate the website.

---

[28] *Lurking Beneath the Surface, supra* note 26.

CORRECTED COMPLAINT – 20

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

83.     Additionally, on most websites, the Response sent back to the user's web browser directs the browser to create small files known as 'cookies' on the user's device.[29] These cookies are saved by the user's web browser, and are used to identify the website user as they browse the website or on subsequent visits to the site.[30] For example, in a more innocuous use case, a cookie may allow the website to remember a user's name and password, language settings, or shopping cart contents.[31]

84.     When a Google user logs onto their account, their web browser records a Google tracking cookie.[32] This cookie includes a specific line of code that links the web browser to the user's Google account.[33]

85.     Google's Pixels use cookies but operate differently than a cookie. Rather than directing the browser to save a file on the user's device, the Pixels acquire information from the browser without notifying the user. The information can include details about the user, his or her interactions with the website, and information about the user's environment (*e.g.,* type of device, type of browser, and sometimes even the physical location of the device), all relayed contemporaneously as the website user navigates the website.

86.     Simultaneously, the Google Pixels, like those installed on the Platform, request identifying information from any Google cookies previously installed on the user's web browser.

---

[29] *What is a web browser?*, MOZILLA, https://www.mozilla.org/en-US/firefox/browsers/what-is-a-browser/ (last visited Dec. 16, 2025).

[30] *Id.*

[31] *Id.*

[32] Cyphers & Gebhart, *supra* note 12.

[33] *Id.*

CORRECTED COMPLAINT – 21

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

87.    The Pixels then combine the data received from the browser with the data acquired from the cookie, and instructs the web browser to transmit the information back to Google. As a result, Google can link all of the user information collected by their Pixels to the user's identity, via the user's Google profile.  Thus, even if a user never actually logs into a website or fills out a form, the website, along with Google, can know the user's identity.

88.    A remarkable number of Americans possess a Google account. Just one of Google's many products, its Gmail e-mail client, is used by over one-third of Americans.[34] When these users visit a website, like those on which the Platform has been installed, that utilizes a Google Pixel, any information collected by the Pixel can be linked to the user's identity through the Google cookies installed on the user's web browser.

89.    However, it is not only Google account holders that are at risk of having Pixel-collected website data linked to their identities. Rather, Google utilizes sophisticated data tracking methods to identify even those few users who do not have a Google account.

90.    Google's Pixels, like those on the Platform, can acquire information about the user's device and browser, such as their screen resolution, time zone setting, browser software type and version, operating system type and version, language setting, and IP address.

91.    An internet user's combination of such device and browser characteristics, commonly referred to as their "browser fingerprint," is "often unique."[35] By tracking this browser

---

[34] *See* Harsha Kiran, *49 Gmail Statistics To Show How Big It Is In 2024*, TECHJURY (Jan. 3, 2024), https://techjury.net/blog/gmail-statistics/ (last visited Dec. 16, 2025) ("Gmail accounts for 130.9 million of the total email users in the US"). The United States population is approximately 337.4 million. *See* UNITED STATES CENSUS BUREAU, https://www.census.gov/popclock/ (last visited Dec. 16, 2025).

[35] Cyphers & Gebhart, *supra* note 12.

CORRECTED COMPLAINT – 22

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

fingerprint, Google is able to compile a user's activity across the internet.[36] And, as Google continuously compiles user data over time, its understanding of the user's browser fingerprint becomes more sophisticated such that it needs only to collect a single piece of identifying information to identify the user linked to a browser fingerprint.

     **iv.**     **Defendants Disclosed Plaintiffs' and Class Members' Sensitive Information to Google.**

92.     To purchase cannabis products from local dispensaries, Plaintiffs and Class Members were required to create an account and upload their medical marijuana card details through the Platform hosted on their dispensary's website.

93.     Unbeknownst to Plaintiffs and Class Members, Dutchie intentionally configured the Tracking Tools installed on the Platform to capture and transmit the Sensitive Information that they communicated through the Platform to third parties, including Google. The Dispensary Defendants in turn then installed the Platform on their websites and directed their customers, including Plaintiffs, to use the Platform to purchase medical marijuana despite possessing actual and/or constructive knowledge that Sensitive Information disclosed through the Platform would be transmitted to unauthorized third parties without their customers' knowledge or consent. While the Dispensary Defendants may claim that they had no knowledge of the Tracking Tools embedded in the Platform, in truth, the Dispensary Defendants had a non-delegable duty, including under state laws, to protect the Sensitive Information that they solicited in the course of their business, including a duty to fully vet all third-party software to ensure it would not improperly disclose their customers' Sensitive Information.

---

[36] *Id.*

CORRECTED COMPLAINT – 23

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

94.     The following screenshot ("Figure 1") depicts the network transmissions made by the Google Tracking Tools installed on the Platform when users of the Website filter a dispensary's offerings for medical marijuana products. The information provided in Figure 1 is exemplar information collected on the Platform, and is not Plaintiffs' information, but the Tracking Tools installed on the Platform collected for each Plaintiff information that in sum and substance was similar to what is shown in the Figure.[37] As Figure 1 shows, when customers seek medical marijuana products, the Sensitive Information requested and contemporaneously transmitted to Google by the Tracking Tools installed on the Website include the specific dispensary the customer is purchasing medical marijuana from (in this case, Buddy's in Renton, Washington), and the fact that the customer is seeking medical marijuana products.

---

[37] Figure 1 and Figure 2, below, were captured from the Platform installed on one of Dutchie's client dispensary's website. Wherever it is installed, the Platform includes Google Tracking Tools which transmit the same information, in the same manner as depicted in Figures 1 and 2. *See Melrose MED Menu*, GARDEN REMEDIES, www.gardenremedies.com/stores/garden-remedies-melrose (last visited Dec. 16, 2025); *Medical Delivery*, NETA, www.netacare.org/shop/medical-delivery?dtche%5Blocation%5D=neta-franklin-med (last visited Dec. 16, 2025); *Ethos Wilkes-Barre Menu*, ETHOS, wilkesbarre.ethoscannabis.com/stores/ethos-wilkes-barre?_gl=1*14zkipo*_gcl_au*MTA4MTg1MjU3Ny4xNzY1OTIwOTE1*_ga*NzIzOTg3MzA4LjE3NjU5MjA5MTU.*_ga_LJ036PP29V*czE3NjU5MjA5MTQkbzEkZzEkdDE3NjU5MjM2NTIkajYwJGwwJGgw (last visited Dec. 16, 2025); *Shop*, CURALEAF, https://curaleaf.com/stores/curaleaf-ny-hudson-valley.

CORRECTED COMPLAINT – 24



*Figure 1. Exemplar screenshot depicting back-end network traffic from the Platform which shows information transmitted to Google when Website users filter a dispensary's product offerings for medical marijuana products.*

CORRECTED COMPLAINT – 25

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

95.     The Tracking Tools also record every action that Platform users make while shopping for cannabis products on the Platform. As the following screenshot ("Figure 2") demonstrates, the Tracking Tools transmit the specific products that Platform users add to their shopping cart, as well as the products that they actually end up purchasing (in this instance, a "Blood Orange CBC+THC 10pk/200mg Gummies"). Even more troubling, the Tracking Tools specifically notify Google when users make a medical marijuana purchase.



CORRECTED COMPLAINT – 26

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933



*Figure 2. Exemplar screenshot depicting back-end network traffic from the Platform which shows information transmitted to Google when Platform users add a medical marijuana item to their shopping cart and check out.*

96.     As Figures 1 and 2 show, when a medical marijuana patient makes a purchase on the Platform, the information transmitted to Google includes the fact that the user purchased a medical marijuana product, the specific name and type of product purchased, the payment method used, and the delivery method selected. Moreover, this Sensitive Information was transmitted alongside the identifier numbers attached to Google's 'cid' and 'ga_id' cookies, which identify the user's Google account, along with other information that is commonly used to create a browser fingerprint, such as the user's language selection, screen resolution, IP address, web browser software and version number, and operating system and version number. Moreover, this Sensitive Information is transmitted at every step of the purchase product, from when the Website user first begins browsing the online storefront, to when the Website user adds a product to their online shopping cart, to when the Website user checks out to complete their purchase.

97.     In their default state, Google's Pixels record and transmit only "automatic events," consisting largely of routine user behavior, such as clicking a link, clicking on an advertisement,

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

or viewing a webpage.[38] Defendants purposely configured the Google Pixels on the Platform to collect and transmit additional user data, including the fact that Platform users sought medical marijuana products and purchased specific medical marijuana products.

**B.    DEFENDANTS DISCLOSED PLAINTIFFS' AND CLASS MEMBERS' SENSITIVE INFORMATION TO THIRD PARTIES WITHOUT THEIR KNOWLEDGE OR CONSENT**

**i.    Defendants failed to inform Plaintiffs and Class Members of their disclosure of Plaintiffs' and Class Members' Sensitive Information, in violation of its Notice of Privacy Practices**

98.    Defendants breached Plaintiffs' and Class Members' right to privacy by unlawfully disclosing their Sensitive Information to third parties, including Google. Specifically, Plaintiffs and Class Members had a reasonable expectation of privacy that Defendants would not disclose their Sensitive Information to third parties. Defendants did not inform Plaintiffs that they were sharing their Sensitive Information with third parties, including Google.

99.    By engaging in this improper sharing of information without Plaintiffs' and Class Members' consent, Defendants violated Plaintiffs' and Class Members' right to privacy and unlawfully disclosed their Sensitive Information.

100.    Despite never telling users like Plaintiffs and Class Members, Defendants allowed third parties such as Google to intercept Plaintiffs' and Class Members' Sensitive Information and use it for advertising purposes.

///

///

///

---

[38]    *Automatically Collected Events*, GOOGLE ANALYTICS HELP, https://support.google.com/analytics/answer/9234069, (last visited Dec. 16, 2025).

CORRECTED COMPLAINT – 28

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

ii.     **The Tracking Tools Used by Defendants Were Imperceptible to Plaintiffs and Class Members**

101.    The Tracking Tools installed on the Platform were invisible to Plaintiffs and Class Members. Without analyzing the network information transmitted by the Platform through examination of its source code or the use of sophisticated web developer tools, there was no way for a Platform user to discover the presence of the Tracking Tools. As a result, typical internet users, such as Plaintiffs and Class Members, were unable to detect the Tracking Tools on the Platform.

102.    Plaintiffs and Class Members were shown no disclaimer or warning that their Sensitive Information would be disclosed to any unauthorized third party without their express consent.

103.    Plaintiffs and Class Members did not know that their Sensitive Information was being collected and transmitted to an unauthorized third party.

104.    Because Plaintiffs and Class Members were not aware of the Tracking Tools on the Platform, or that their Sensitive Information would be collected and transmitted to Google, they could not and did not consent to Defendants' conduct.

C.      **DEFENDANTS WERE ENRICHED BY THEIR DISCLOSURE OF PLAINTIFFS' AND CLASS MEMBERS' SENSITIVE INFORMATION TO THIRD PARTIES**

i.      **Defendants Received Material Benefits in Exchange for Plaintiffs' Sensitive Information**

105.    As explained, *supra*, users of Google's Business Tools, like Defendants, receive access to advertising and marketing analytics services in exchange for installing Google's Tracking Tools on its website.

CORRECTED COMPLAINT – 29

106.    Upon information and belief, Defendants, as users of Google's Business Tools, received compensation in the form of advanced advertising services and cost-effective marketing on third-party platforms in exchange for allowing Google to collect Plaintiffs' and Class Members' Sensitive Information.

### ii.    Plaintiffs' and Class Members' Data Had Financial Value

107.    Moreover, Plaintiffs' and Class Members' Sensitive Information has value and Defendants' disclosure and interception of that Sensitive Information harmed Plaintiffs and the Class.

108.    According to the annual reports of Facebook, another major online advertising proprietor, the value it derives from user data has continuously risen. "In 2013, the average American's data was worth about $19 per year in advertising sales to Facebook, according to its financial statements. In 2020, [it] was worth $164 per year."[39]

109.    Conservative estimates suggest that in 2018, Internet companies earned $202 per American user from mining and selling data. That figure is only due to keep increasing; estimates for 2022 are as high as $434 per user, for a total of more than $200 billion industry wide.

110.    Moreover, health information is particularly valuable. Healthcare data brokers charge up to $125 per clinical data record, with electronic healthcare databases selling for up to $500,000.[40] In fact, compared to other types of personal data, healthcare data records are by far

---

[39] Geoffrey A. Fowler, *There's no escape from Facebook, even if you don't use it*, THE WASHINGTON POST (Aug. 29, 2021), https://www.washingtonpost.com/technology/2021/08/29/facebook-privacy-monopoly/ (last visited Dec. 16, 2025).

[40] *The Value of Data*, TRUSTWAVE (2017), *available online at*: https://www.infopoint-security.de/media/TrustwaveValue_of_Data_Report_Final_PDF.pdf.

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

the most valuable, fetching prices of up to $250 per record on the black market, compared to $5.40 for the next highest value record (a payment card).[41]

111.    Several companies have products through which they pay consumers for a license to track certain information. Indeed, Nielsen, UpVoice, HoneyGain, and SavvyConnect are all companies, in addition to Google, that pay for browsing history information.

112.    The unauthorized disclosure of Plaintiffs' and Class Members' private and Sensitive Information has diminished the value of that information, resulting in harm including to Plaintiffs and Class Members.

D.    **DEFENDANTS' USE OF THE TRACKING TOOLS VIOLATES MASSACHUSETTS, PENNSYLVANIA, WASHINGTON AND NEW YORK LAW**

i.    **Massachusetts General Laws ch 94i, § 3**

113.    The 2012 Act titled An Act for the Humanitarian Medical Use of Marijuana legalized cannabis for medical purposes in the Commonwealth of Massachusetts.[42]

114.    Section 3 of Massachusetts General Laws Chapter 94i established a confidential medical cannabis authorization database and set forth every patient's "right to confidentiality of all records and communications related to their care provided by a medical use marijuana licensee or establishment or by a registered healthcare professional[.]" Mass. Gen. Laws Ann. Ch 94i, § 3. Under Section 3, "[i]ndividual names and other identifying information" is exempt from public disclosure. *Id.*

---

[41] Todd Zigrang & Jessica Bailey-Wheaton, *Valuing Healthcare Data*, THE VALUE EXAMINER (2023), *available online at*: https://www.healthcapital.com/researchmaterialdocuments/publishedarticles/Valuing%20Healthcare%20Data.pdf

[42] *Massachusetts Marijuana Laws*, MASSACHUSETTS CANNABIS INFORMATION, https://massachusettscannabis.org/laws (last visited Dec. 12, 2025).

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

115.    Therefore, Defendants' use of the Tracking Tools to disclose the identities of their Massachusetts medical marijuana clients violates Section 3 of Chapter 94i.

**ii.    The Pennsylvania Medical Marijuana Act ("PMMA") [35 Pa. Stat. Ann. §§ 10231.101, *et seq.*]**

116.    Marijuana became legal for medical use in Pennsylvania on April 17, 2016.[43]

117.    Section 302 of the Pennsylvania Medical Marijuana Act established a confidential list of patients and caregivers to whom the Department of Health of the Commonwealth issued identification cards. 35 Pa. Stat. Ann. § 10231.302(a). Under Section 302, "[a]ll information obtained by the department relating to patients, caregivers and other applicants shall be confidential and not subject to public disclosure," including "[i]ndividual identifying information about patients and caregivers." *Id.* An entity that discloses such information is guilty of a third degree misdemeanor. *Id.* § 10231.1308.

118.    Therefore, Defendants' use of the Tracking Tools to disclose the identities of their Pennsylvania medical marijuana clients to unauthorized third parties violates the PMMA.

**iii.    The New York Marihuana Regulation and Taxation Act ("MHRTA") [NY CLS Cannabis § 30, *et seq.*]**

119.    The MHRTA requires medical cannabis retailers to strictly protect the privacy of their customers.

120.    Under the MHRTA:

> The maintenance and access of records pertaining to certifications, registrations, certified patients and designated caregivers shall be in compliance with the federal health insurance portability and accountability act of 1996, and with all privacy and confidentiality protections afforded to individuals under the law.

---

[43]    *Pennsylvania Marijuana Laws*, PENNSYLVANIA CANNABIS INFORMATION, https://pennsylvaniastatecannabis.org/laws (last visited Dec. 12, 2025).

CORRECTED COMPLAINT – 32

NY CLS Cannabis § 32(1).

121.    Therefore, Defendants' use of the Tracking Tools to disclose the identities of their New York medical marijuana clients to unauthorized third parties violates the MHRTA.

> **iv.    The Washington Cannabis Patient Protection Act ("CPPA") [Wash. Rev. Code Ann. § 69.69.51, *et seq.*]**

122.    In November of 1998, Washington voters approved Initiative I-692, the Medical Use of Marijuana Act, legalizing cannabis for medical purposes.[44] Shortly thereafter, the legislature enacted the Cannabis Patient Protection Act to regulate the nascent cannabis industry.

123.    Through the CPPA, the Washington legislature included significant" privacy protections…in terms of limiting access to patient information," including "strict penalties" for misuse of such information. *Carter v. Inslee*, No. C16-0809-JCC, 2016 U.S. Dist. LEXIS 189718, at *13 (W.D. Wash. June 30, 2016).

124.    Specifically, the CPPA creates a confidential medical cannabis authorization database that allows cannabis retailers, like Defendants, to confirm that an individual seeking medical cannabis has a valid medical marijuana card. Wash. Rev. Code Ann. § 69.51A.230(1)(e). But, "[p]ersonally identifiable information…included in the medical cannabis authorization database is confidential and exempt from public disclosure, inspection, or copying." Wash. Rev. Code Ann. § 69.51A.230(9)(a). An entity that discloses such information is guilty of a class C felony. Wash. Rev. Code Ann. § 69.51A.240.

125.    Therefore, Defendants' use of the Tracking Tools to disclose the identities of their Washington medical marijuana clients to unauthorized third parties violates the CPPA.

---

[44] *See November 1998 General Election Results*, WASHINGTON SECRETARY OF STATE, *available online at*: https://www.sos.wa.gov/elections/.

CORRECTED COMPLAINT – 33

v.       **The Washington My Health My Data Act ("MHMDA") [Wash. Rev. Code Ann. § 19.373.005, *et seq.*]**

126.     The Washington legislature enacted the MHMDA in 2023 to expand protections for privacy of all medical information, even that not protected under the federal Health Insurance Portability and Accountability Act ("HIPAA"). Specifically, the legislature states that:

> The legislature finds that the people of Washington regard their privacy as a fundamental right and an essential element of their individual freedom. Washington's Constitution explicitly provides the right to privacy. Fundamental privacy rights have long been and continue to be integral to protecting Washingtonians and to safeguarding our democratic republic... Information related to an individual's health conditions or attempts to obtain health care services is among the most personal and sensitive categories of data collected. Washingtonians expect that their health data is protected under laws like the health information portability and accountability act (HIPAA). However, HIPAA only covers health data collected by specific health care entities, including most health care providers. Health data collected by noncovered entities, including certain apps and websites, are not afforded the same protections. [The My Health My Data Act] works to close the gap between consumer knowledge and industry practice by providing stronger privacy protections for all Washington consumers' health data."

Wash. Rev. Code Ann. § 19.373.005.

127.     The MHMDA protects against the unauthorized disclosure of "consumer health data," defined as "personal information that is linked or reasonably linkable to a consumer and that identifies the consumer's past, present, or future physical or mental health status," including a consumer's "[u]se or purchase of prescribed medication[.]" Wash. Rev. Code Ann. § 19.373.010(8).

128.     Under the MHMDA, an entity may not collect any consumer health data without obtaining consent from the consumer for "such collection for a specified purpose[.]" " Wash. Rev. Code Ann. § 19.373.030(a). To comply with this requirement, the entity must maintain a

CORRECTED COMPLAINT – 34

"consumer health data privacy policy that clearly and conspicuously discloses" the categories and source of any consumer health data collected, as well as the identity of any third parties with which such health data is being shared. Wash. Rev. Code Ann. § 19.373.020(1)(a). The policy must also document the procedure through which the consumer may opt out of any data collection. *Id*; *see also* Wash. Rev. Code Ann. § 19.373.040 (documenting right of consumer to opt out of data collection). A violation of the MHMDA also constitutes a violation of the Washington Consumer Protection Act [Wash. Rev. Code Ann. § 19.86]. Wash. Rev. Code Ann. § 19.373.090.

129.    On their Website, Defendants do not disclose their collection and disclosure of website visitors' Sensitive Information through the Tracking Tools. Accordingly, Defendants' use of the Tracking Tools to disclose the identities of their Washington medical marijuana clients to unauthorized third parties violates the MHMDA.

### E.    PLAINTIFFS' AND CLASS MEMBERS' REASONABLE EXPECTATION OF PRIVACY

130.    At all times when Plaintiffs and Class Members provided their Sensitive Information to Defendants, they each had a reasonable expectation that the information would remain confidential and that Defendants would not share the Sensitive Information with third parties for a commercial purpose, unrelated to providing them with cannabis products.

131.    Privacy polls and studies show that the overwhelming majority of Americans consider obtaining an individual's affirmative informed consent before a company collects and shares that individual's data to be one of the most important privacy rights.

132.    For example, a recent Consumer Reports study shows that 92-percent of Americans believe that internet companies and websites should be required to obtain consent before selling

CORRECTED COMPLAINT – 35

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

or sharing consumer data, and the same percentage believe those companies and websites should be required to provide consumers with a complete list of the data that is collected about them.[45]

133.    Moreover, Americans are particularly interested in the safety of their health information. Over 50-percent of Americans believe that "medical-records privacy is not sufficiently protected today by law and organizational practices."[46] And, in a study performed by the National Institutes of Health ("NIH"), nearly 80-percent of respondents reported being "very concerned" or "concerned" about the privacy of medical records.[47]

134.    These feelings are particularly acute with regards to medical marijuana. Indeed, numerous studies have noted that medical marijuana patients experience "stigma at multiple socioecological levels" and "report feeling" same due to their use of medical cannabis.[48] As a result, medical marijuana patients "engage in discreet use and covert dispensary visits to avoid stigma and social exclusion."[49]

---

[45] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety-a3980496907 (last visited Dec. 16, 2025).

[46] *The Value of Data*, TRUSTWAVE (2017), *available online at*: https://www.infopoint-security.de/media/TrustwaveValue_of_Data_Report_Final_PDF.pdf.

[47] Daniel S Gaylin, Adil Moiduddin, Shamis Mohamoud, Katie Lundeen, Jennifer A Kelly, *Public Attitudes about Health Information Technology, and Its Relationship to Health Care Quality, Costs, and Privacy*, HEALTH SERV. RES. (2011), *available online at*: https://pmc.ncbi.nlm.nih.gov/articles/PMC3097409/pdf/hesr0046-0920.pdf.

[48] Olivia Cordingley, Elizabeth Salerno Valdez, Samantha Pagán, Emily Lincoln, Janna Ataiants & Stephen Lankenau, *Multi-level Stigma as a Barrier to Accessing Medical Cannabis for Parents in Pennsylvania*, APHA 2025 ANNUAL MEETING AND EXPO (2025), *available online at*: https://apha.confex.com/apha/2025/meetingapp.cgi/Paper/568079; *see also* Travis D Satterlund, Juliet P Lee & Roland S Moore, *Stigma Among New York's Medical Marijuana Patients*, J. Psychoactive Drugs (2015), *available online at*: https://pmc.ncbi.nlm.nih.gov/articles/PMC4341951/.

[49] *Id.*

CORRECTED COMPLAINT – 36

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

135.     Personal data privacy and obtaining consent to share Sensitive Information are material to Plaintiffs and Class Members.

## V.     TOLLING AND ESTOPPEL

136.     Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment of the incorporation of Google's Tracking Tools onto the Platform.

137.     The Tracking Tools on the Platform were and are invisible to the average website visitor.

138.     Through no fault or lack of diligence, Plaintiffs and Class Members were deceived and could not reasonably discover Defendants' deception and unlawful conduct.

139.     Plaintiffs were ignorant of the information essential to pursue their claims, without any fault or lack of diligence on their part.

140.     Defendants had exclusive knowledge that the Platform incorporated the Pixels and other Tracking Tools and yet failed to disclose to customers, including Plaintiffs and Class Members, that by purchasing cannabis through the Platform, Plaintiffs' and Class Members' Sensitive Information would be disclosed or released to unauthorized third parties, including Google.

141.     Under the circumstances, Defendants were under a duty to disclose the nature, significance, and consequences of its collection and treatment of its customers' Sensitive Information. In fact, to the present, Defendants have not conceded, acknowledged, or otherwise indicated to its customers that they have disclosed or released their Sensitive Information to unauthorized third parties. Accordingly, Defendants are estopped from relying on any statute of limitations.

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

142.    Moreover, all applicable statutes of limitation have also been tolled pursuant to the discovery rule.

143.    The earliest that Plaintiffs or Class Members, acting with due diligence, could have reasonably discovered Defendants' conduct would have been shortly before the filing of this Complaint.

## VI.    CLASS ALLEGATIONS

144.    This action is brought by the named Plaintiffs on their behalf and on behalf of a proposed Class of all other persons similarly situated under Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4).

145.    The Nationwide Class that Plaintiffs seek to represent is defined as follows:

**The Nationwide Class**

All natural persons who used the Platform to purchase cannabis products, and whose Sensitive Information was disclosed or transmitted to Google or any other unauthorized third party.

146.    In addition to the claims asserted on behalf of the Nationwide Class, Plaintiffs assert claims on behalf of separate Massachusetts, Pennsylvania, New York, and Washington Subclasses, which is defined as follows:

**Massachusetts Subclass**

All natural persons residing in the State of Massachusetts who used the Platform to purchase cannabis products and whose Sensitive Information was disclosed or transmitted to Google, or any other unauthorized third party.

///

CORRECTED COMPLAINT – 38

**Pennsylvania Subclass**

All natural persons residing in the State of Pennsylvania who used the Platform to purchase cannabis products and whose Sensitive Information was disclosed or transmitted to Google, or any other unauthorized third party.

**New York Subclass**

All natural persons residing in the State of New York who used the Platform to purchase cannabis products and whose Sensitive Information was disclosed or transmitted to Google, or any other unauthorized third party.

**Washington Subclass**

All natural persons residing in the State of Washington who used the Platform to purchase cannabis products and whose Sensitive Information was disclosed or transmitted to Google, or any other unauthorized third party.

147.    Excluded from the proposed Class are any claims for personal injury, wrongful death, or other property damage sustained by the Class; Defendants and their parents or subsidiaries, any entities in which they have a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns; and any Judge conducting any proceeding in this action and members of their immediate families.

148.    Plaintiffs reserve the right to amend the definitions of the Class or add subclasses if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

149.    **Numerosity.** The Class is so numerous that the individual joinder of all members is impracticable. On information and belief, there are at least 100,000 individuals that have been

CORRECTED COMPLAINT – 39

impacted by Defendants' actions. Moreover, the exact number of those impacted is generally ascertainable by appropriate discovery and is in the exclusive control of Defendants.

150.    **Commonality.** Common questions of law or fact arising from Defendants' conduct exist as to all members of the Class, which predominate over any questions affecting only individual Class Members. These common questions include, but are not limited to, the following:

a)    Whether and to what extent Defendants had a duty to protect the Sensitive Information of Plaintiffs and Class Members;

b)    Whether Defendants had duties not to disclose the Sensitive Information of Plaintiffs and Class Members to unauthorized third parties;

c)    Whether Defendants adequately, promptly, and accurately informed Plaintiffs and Class Members that their Sensitive Information would be disclosed to third parties;

d)    Whether Defendants violated the law by failing to promptly notify Plaintiffs and Class Members that their Sensitive Information was being disclosed without their consent;

e)    Whether Defendants adequately addressed and fixed the practices which permitted the unauthorized disclosure of customers' Sensitive Information;

f)    Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to keep the Sensitive Information belonging to Plaintiffs and Class Members free from unauthorized disclosure;

CORRECTED COMPLAINT – 40

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

g)    Whether Defendants violated the statutes asserted as claims in this Complaint;

h)    Whether Plaintiffs and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendants' wrongful conduct;

i)    Whether Defendants knowingly omitted material representations with respect to their data security practices; and

j)    Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Defendants' disclosure of their Sensitive Information.

151.    **Typicality.** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Sensitive Information, like that of every other Class Member, was compromised as a result of Defendants' incorporation and use of the Tracking Tools.

152.    **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages Plaintiffs have suffered are typical of other Class Members. Plaintiffs have also retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

153.    **Predominance**. Defendants have engaged in a common course of conduct toward Plaintiffs and Class Members in that all the Plaintiffs' and Class Members' data was unlawfully

CORRECTED COMPLAINT – 41

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

stored and disclosed to unauthorized third parties, including Google, in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

154.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

155.    Defendants acted on grounds that apply generally to the Class as a whole so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

156.    Likewise, particular issues under Fed. R. Civ. P. 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

        a)    Whether Defendants owed a legal duty to Plaintiffs and the Class

                to exercise due care in collecting, storing, and safeguarding their

CORRECTED COMPLAINT – 42

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

Sensitive Information and not disclosing it to unauthorized third

parties;

b)      Whether Defendants breached a legal duty to Plaintiffs and Class

Members to exercise due care in collecting, storing, using, and

safeguarding their Sensitive Information;

c)      Whether Defendants failed to comply with their own policies

and applicable laws, regulations, and industry standards relating

to data security;

d)      Whether Defendants adequately and accurately informed

Plaintiffs and Class Members that their Sensitive Information

would be disclosed to third parties;

e)      Whether Defendants failed to implement and maintain

reasonable security procedures and practices appropriate to the

nature and scope of the information disclosed to third parties;

and

f)      Whether Class Members are entitled to actual, consequential,

and/or nominal damages and/or injunctive relief as a result of

Defendants' wrongful conduct.

157.    Finally, all members of the proposed Class are readily ascertainable. Defendants

have access to Class Members' names and addresses affected by the unauthorized disclosures that

have taken place.

///

CORRECTED COMPLAINT – 43

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

## COUNT I
## INVASION OF PRIVACY
### *(On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Massachusetts, Pennsylvania, New York, and Washington Subclasses)*
### *(As to All Defendants)*

158.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 157 as if fully set forth herein.

159.    Plaintiffs and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their highly personal and statutorily protected Sensitive Information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to the exfiltration and/or unauthorized sharing of their communications without Plaintiffs' and Class Members' knowledge or consent.

160.    Plaintiffs and Class Members had a reasonable expectation of privacy in their communications with Defendants via the Platform and the communications platforms and services therein.

161.    Plaintiffs and Class Members communicated Sensitive Information that they intended for only Defendants to receive and that they understood Defendants would keep private and secure.

162.    Defendants' disclosure of the substance and nature of those communications to third parties without the knowledge and informed consent of Plaintiffs and Class Members is an intentional intrusion on Plaintiffs' and Class Members' solitude or seclusion.

163.    Plaintiffs and Class Members had a reasonable expectation of privacy given Defendants' Notice of Privacy Practices and other representations.

CORRECTED COMPLAINT – 44

164.    Moreover, Plaintiffs and Class Members have a general expectation that their communications regarding sensitive, highly personal information would be protected from surreptitious disclosure to third parties.

165.    Defendants' disclosure of Plaintiffs' and Class Members' Sensitive Information coupled with individually identifying information is highly offensive to the reasonable person.

166.    As a result of Defendants' actions, Plaintiffs and Class Members have suffered harm and injury including, but not limited to, an invasion of their privacy rights.

167.    Plaintiffs and Class Members have been damaged as a direct and proximate result of Defendants' invasion of their privacy and are entitled to compensatory and/or nominal damages.

168.    Plaintiffs and Class Members seek appropriate relief for that injury including, but not limited to, damages that will reasonably compensate Plaintiffs and Class Members for the harm to their privacy interests as a result of the intrusions upon their privacy.

169.    Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful and intentional nature of Defendants' actions, directed at injuring Plaintiffs and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendants from engaging in such conduct in the future.

170.    Plaintiffs also seek such other relief as the Court may deem just and proper.

## <u>COUNT II</u>
## BREACH OF CONFIDENCE
### *<u>(On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Massachusetts, Pennsylvania, New York, and Washington Subclasses)</u>*
### *<u>(As to All Defendants)</u>*

171.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 170 as if fully set forth herein.

CORRECTED COMPLAINT – 45

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

172.    Medical product providers have a duty to their customers, potential customers, and former customers to keep non-public medical information completely confidential.

173.    Plaintiffs and Class Members had reasonable expectations of privacy in their communications exchanged with Defendants, including communications exchanged on the Platform.

174.    Contrary to their duties as medical providers and their express promises of confidentiality, Defendants deployed the Tracking Tools to disclose and transmit Plaintiffs' and Class Members' Sensitive Information and the contents of their communications exchanged with Defendants to third parties, including Google.

175.    Defendants' disclosures of Plaintiffs' and Class Members' Sensitive Information were made without their knowledge, consent or authorization, and were unprivileged.

176.    The harm arising from a breach of provider-patient confidentiality includes erosion of the essential confidential relationship between the healthcare provider and the patient.

177.    As a direct and proximate cause of Defendants' unauthorized disclosures of personally identifiable, non-public medical information, and communications, Plaintiffs and Class Members were damaged by Defendants' breach in that:

a)    Sensitive and confidential information that Plaintiffs and Class Members intended to remain private is no longer private;

b)    Defendants took something of value from Plaintiffs and Class Members and derived benefit therefrom without Plaintiffs' and Class Members' knowledge or informed consent and without compensating Plaintiffs and Class Members for the data;

///

CORRECTED COMPLAINT – 46

c) Plaintiffs and Class Members did not get the full value of the medical products for which they paid, which included Defendants' duty to maintain confidentiality;

d) Defendants' actions diminished the value of Plaintiffs' and Class Members' Sensitive Information, and

e) Defendants' actions violated the property rights Plaintiffs and Class Members have in their Sensitive Information.

178.    Plaintiffs and Class Members are therefore entitled to general damages for invasion of their rights in an amount to be determined by a jury and nominal damages for each independent violation. Plaintiffs are also entitled to punitive damages.

## COUNT III
## NEGLIGENCE
### *(On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Massachusetts, Pennsylvania, New York, and Washington Subclasses)*
### *(As to All Defendants)*

179.    Plaintiffs repeat and reallege the allegations contained in in paragraphs 1 through 178 as if fully set forth herein.

180.    Through their use of the Platform, Plaintiffs and Class Members provided Defendants with their Sensitive Information, believing such Information would be kept confidential.

181.    By collecting and storing this data, Defendants had a duty of care to use reasonable means to secure and safeguard it from unauthorized disclosure to third parties.

182.    Defendants negligently failed to take reasonable steps to protect Plaintiffs' and Class Members' Sensitive Information from being disclosed to third parties, without their consent,

CORRECTED COMPLAINT – 47

including to Google.

183.    Defendants further negligently omitted to inform Plaintiffs and the Class that it would use their Sensitive Information for marketing purposes, and/or that their Sensitive Information would be transmitted to third parties.

184.    Defendants knew, or reasonably should have known, that Plaintiffs and the Class would not have provided their Sensitive Information to Defendants had they known that Defendants intended to use that Information for unlawful purposes.

185.    Defendants' conduct has caused Plaintiffs and the Class to suffer damages by having their highly personal, personally identifiable Sensitive Information accessed, stored, and disseminated without their knowledge or consent.

186.    Plaintiffs and Class Members are entitled to compensatory, nominal, and/or punitive damages.

187.    Defendants' negligent conduct is ongoing, in that they still hold the Sensitive Information of Plaintiffs and Class Members in an unsafe and unsecure manner. Therefore, Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendants to (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) provide adequate credit monitoring to all Class Members.

///

///

///

///

///

CORRECTED COMPLAINT – 48

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

## COUNT IV
## BREACH OF IMPLIED CONTRACT
### *(On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Massachusetts, Pennsylvania, New York, and Washington Subclasses)*
### *(As to All Defendants)*

188.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 187 as if fully set forth herein.

189.    When Plaintiffs and Class Members provided their Sensitive Information to Defendants in exchange for medical products and services, they entered into an implied contract pursuant to which Defendants agreed to safeguard and not disclose the Sensitive Information without consent.

190.    Plaintiffs and Class Members accepted Defendants' offers and provided their Sensitive Information to Defendants.

191.    Plaintiffs and Class Members would not have entrusted Defendants with their Sensitive Information in the absence of an implied contract between them and Defendants obligating Defendants to not disclose Sensitive Information without consent.

192.    Defendants breached these implied contracts by disclosing Plaintiffs' and Class Members' Sensitive Information to third parties like Google.

193.    As a direct and proximate result of Defendants' breaches of these implied contracts, Plaintiffs and Class Members sustained damages as alleged herein.

194.    Plaintiffs and Class Members would not have used Defendants' services, or would have paid substantially less for those services, had they known their Sensitive Information would be disclosed.

///

CORRECTED COMPLAINT – 49

195.    Plaintiffs and Class Members are entitled to compensatory, consequential, and/or nominal damages as a result of Defendants' breaches of implied contract.

## COUNT V
## UNJUST ENRICHMENT
### *(On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Massachusetts, Pennsylvania, New York, and Washington Subclasses)*
### *(As to All Defendants)*

196.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 195 as if fully set forth herein.

197.    Plaintiffs plead this claim in the alternative to their breach of implied contract claim.

198.    Plaintiffs and Class Members conferred a monetary benefit on Defendants in exchange for healthcare products. Specifically, they provided their Sensitive Information to Defendants which Defendants then utilized for marketing and advertising purposes, as described, *supra*.

199.    Defendants knew that Plaintiffs and Class Members conferred a benefit upon them, which Defendants accepted. Defendants profited from the Sensitive Information of Plaintiffs and Class Members by exchanging it for marketing and advertising services.

200.    In particular, Defendants enriched themselves by obtaining the inherent value of Plaintiffs' and Class Members' Sensitive Information, and by saving the costs it reasonably should have expended on marketing and/or data security measures to secure Plaintiffs' and Class Members' Sensitive Information.

201.    Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize their own profits over the privacy of their customers'

CORRECTED COMPLAINT – 50

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

Sensitive Information.

202.    Under the principles of equity and good conscience, Defendants should not be permitted to retain such benefits obtained by their surreptitious collection and transmission of Plaintiffs' and Class Members' Sensitive Information.

203.    If Plaintiffs and Class Members knew that Defendants had not reasonably secured their Sensitive Information, they would not have agreed to provide their Sensitive Information to Defendants.

204.    Plaintiffs and Class Members have no adequate remedy at law for this count. An unjust enrichment theory provides the equitable disgorgement of profits even where an individual has not suffered a corresponding loss in the form of money damages.

205.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered and will continue to suffer injury.

206.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received from them, or to refund the amounts that Plaintiffs and Class Members overpaid for Defendants' services.

## COUNT VI
## VIOLATIONS OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA"), 18 U.S.C. § 2511(1), *et seq.*
### Unauthorized Interception, Use, and Disclosure
### *(On Behalf of Plaintiffs and the Nationwide Class)*
### *(As to All Defendants)*

207.    Plaintiffs repeat and reallege the allegations contained in the paragraphs 1 through 206 as if fully set forth herein.

///

CORRECTED COMPLAINT – 51

208.    The ECPA protects both sending and receipt of communications.

209.    18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

210.    The transmissions of Plaintiffs' Sensitive Information to the Platform qualify as "communications" under the ECPA's definition of 18 U.S.C. § 2510(12).

211.    Electronic Communications. The transmission of Sensitive Information between Plaintiffs and Class Members and the Platform with which they chose to exchange communications are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(2).

212.    Content. The ECPA defines content, when used with respect to electronic communications, to "include[] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8) (emphasis added).

213.    Interception. The ECPA defines the interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device" and "contents … include any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(4), (8).

214.    Electronical, Mechanical or Other Device. The ECPA defines "electronic, mechanical, or other device" as "any device … which can be used to intercept a[n] … electronic communication[.]" 18 U.S.C. § 2510(5). The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

CORRECTED COMPLAINT – 52

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

      a)     Plaintiffs' and Class Members' browsers;

      b)     Plaintiffs' and Class Members' computing devices;

      c)     Defendants' web-servers; and

      d)     The Pixel code deployed by Defendants to effectuate the sending and acquisition of customer communications.

215.    By utilizing and embedding the Pixels on the Platform, Defendants intentionally intercepted, endeavored to intercept, and procured another person to intercept, the electronic communications of Plaintiffs and Class Members, in violation of 18 U.S.C. § 2511(1)(a).

216.    Specifically, Defendants intercepted Plaintiffs' and Class Members' electronic communications via the Pixels, which tracked, stored, and unlawfully disclosed Plaintiffs' and Class Members' Private Information to third parties such as Google.

217.    Defendants' intercepted communications include, but are not limited to, communications to/from Plaintiffs and Class Members regarding their Sensitive Information, including the reasons for their appointment, the dates of their appointment, and the location of their appointment.

218.    By intentionally disclosing or endeavoring to disclose the electronic communications of Plaintiffs and Class Members to third parties, while knowing or having reason to know that such information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendants violated 18 U.S.C. § 2511(1)(c).

219.    By intentionally using, or endeavoring to use, the contents of the electronic communications of Plaintiffs and Class Members, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendants violated 18 U.S.C. § 2511(1)(d).

CORRECTED COMPLAINT – 53

220.    <u>Unauthorized Purpose</u>. Defendants intentionally intercepted the contents of Plaintiffs' and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State—namely, invasion of privacy, among others.

221.    The ECPA provides that a "party to the communication" may be liable where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C § 2511(2)(d).

222.    Defendants are not a party to the communication based on their unauthorized duplication and transmission of communications with Plaintiffs and the Class.  However, even assuming Defendants are parties, Defendants' simultaneous, unknown duplication, forwarding, and interception of Plaintiffs' and Class Members' Sensitive Information does not qualify for the party exemption.

223.    Defendants' acquisition of sensitive communications that was used and disclosed to Google was done for purposes of committing criminal and tortious acts in violation of the laws of the United States and individual States nationwide as set forth herein, including:

a)    Invasion of privacy;

b)    Breach of confidence;

c)    Violations of Massachusetts General Laws ch 94i § 3;

d)    Violations of the Pennsylvania Medical Marijuana Act ("PMMA:), 35 Pa. Stat. Ann. § 10231.101, *et seq.*;

e)    Violations of the New York Marihuana Regulation and Taxation Act ("MHRTA"), NY CLS Cannabis § 30, *et seq.*;

///

CORRECTED COMPLAINT – 54

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

f)      violations of the Washington Cannabis Patient Protection Act ("CPPA");

g)      violations of the Wash. Rev. Code Ann. § 69.69.51, *et seq.*; and the

         Washington My Health My Data Act ("MHMDA")

h)      violations of New York General Business Law § 349; and

i)      violations of the Massachusetts Right to Privacy Law, Mass. Ann. Laws

         Ch. 214, § 1b.

224.   Defendants' conduct violated 42 U.S.C. § 1320d-6 in that it used and caused to be used cookie identifiers associated with specific users, including Plaintiffs and Class Members, without user authorization; and disclosed individually identifiable Sensitive Information to Google without user authorization.

225.   Defendants is not exempt from ECPA liability under 18 U.S.C. § 2511(2)(d) on the ground that they were participants in Plaintiffs' and Class Members' communications about their Sensitive Information on the Platform, because they used their participation in these communications to improperly share Plaintiffs' and Class Members' Private Information with Google and other third-parties that did not participate in these communications, that Plaintiffs and Class Members did not know were receiving their Sensitive Information, and that Plaintiffs and Class Members did not consent to receive their Sensitive Information.

226.   As such, Defendants cannot viably claim any exception to ECPA liability.

227.   Plaintiffs and Class Members have suffered damages as a direct and proximate result of Defendants' invasion of privacy in that:

a)      Learning that Defendants have intruded upon, intercepted, transmitted, shared, and used their Sensitive Information for commercial purposes has caused Plaintiffs and Class Members to

CORRECTED COMPLAINT – 55

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

suffer emotional distress;

b)   Defendants received substantial financial benefits from their use
of Plaintiffs' and Class Members' Sensitive Information without
providing any value or benefit to Plaintiffs or Class Members;

c)   Defendants received substantial, quantifiable value from their use
of Plaintiffs' and Class Members' Sensitive Information, such as
understanding how people use the Platform and determining what
ads people see on the Platform, without providing any value or
benefit to Plaintiffs or Class Members;

d)   Defendants failed to provide Plaintiffs and Class Members with
the full value of the services for which they paid, which included
a duty to maintain the confidentiality of their Sensitive
Information; and

e)   The diminution in value of Plaintiffs' and Class Members'
Sensitive Information and/or the loss of privacy due to Defendants
making such Sensitive Information, which Plaintiffs and Class
Members intended to remain private, no longer private.

228.   Defendants intentionally used the wire or electronic communications to increase
their profit margins. Defendants specifically used the Tracking Tools to track and utilize Plaintiffs'
and Class Members' Sensitive Information for financial gain.

229.   Defendants were not acting under color of law to intercept Plaintiffs' and Class
Members' wire or electronic communication.

CORRECTED COMPLAINT – 56

230.     Plaintiffs and Class Members did not authorize Defendants to acquire the content of their communications for purposes of invading their privacy via the Pixels.

231.     Any purported consent that Defendants may claim they received from Plaintiffs and Class Members was not valid.

232.     In sending and acquiring the content of Plaintiffs' and Class Members' communications relating to their use of the Platform, Defendants' purpose was tortious, criminal, and designed to violate federal and state legal provisions including a knowing intrusion into a private, place, conversation, or matter that would be highly offensive to a reasonable person.

233.     As a result of Defendants' violation of the ECPA, Plaintiffs and the Class are entitled to all damages available under 18 U.S.C. § 2520, including statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000, equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs.

### COUNT VII
### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW – DECEPTIVE ACTS OR PRACTICES
### N.Y. GBL § 349
### *(On Behalf of Plaintiff F.O. and the New York Subclass)*
### *(As to Defendants Dutchie and Curaleaf)*

234.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 233 as if fully set forth herein.

235.     N.Y. GBL § 349 prohibits use of "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

236.     Defendants violated N.Y. GBL § 349 by:

a)       Using the Tracking Technologies to record and transmit the sensitive communications made by and to Plaintiff F.O. and New York Subclass

CORRECTED COMPLAINT – 57

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

Members through their websites with third parties, including Google, without their knowledge of consent; and

b)    Disclosing the sensitive communications made by and Plaintiff F.Q. and New York Subclass Members through their websites to third parties, including Google, in exchange for marketing and advertising services.

237.    Defendants intended to mislead Plaintiff F.Q. and New York Subclass Members and intended to induce Plaintiff F.Q. and New York Subclass Members to rely on their misrepresentations and omissions.

238.    As a result of Defendants' violation of N.Y. GBL § 349, Plaintiff F.Q. and New York Subclass are entitled to actual damages, treble damages, and attorneys' fees, filing fees, and costs.

<u>COUNT IX</u>
**VIOLATIONS OF THE MASSACHUSETTS RIGHT TO PRIVACY LAW**
**Mass. Ann. Laws Ch. 214, § 1b**
***(On Behalf of Plaintiff K.P. and J.L., and the Massachusetts Class)***
***(As to Defendants Dutchie, Garden Remedies and NETA)***

239.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 238 as if fully set forth herein.

240.    The Massachusetts Right to Privacy Law creates an actionable "right against unreasonable, substantial or serious interference with a person's privacy." *Doe v. Tenet Healthcare Corp.,* 731 F. Supp. 3d 142, 151 (D. Mass. 2024) (citations omitted). The statute's "broad terms allow for plaintiffs to pursue invasion-of-privacy theories, including public disclosure of private facts and intrusion upon seclusion." *Id*.

241.    To prevail on a claim under the Massachusetts Right to Privacy Law, a plaintiff

CORRECTED COMPLAINT – 58

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

must prove there was (1) a gather or dissemination of facts of a private nature that, (2) resulted in an unreasonable, substantial or serious interference with her privacy.

242.    Plaintiff K.P., Plaintiff J.L., and Massachusetts Subclass Members had a reasonable expectation of privacy in their communications with Defendant via its Website and the communications platforms and services therein.

243.    Plaintiff K.P., Plaintiff J.L., and Massachusetts Subclass Members communicated Sensitive Information that they intended for only Defendant to receive and that they understood Defendant would keep private and secure.

244.    Defendant's disclosure of the substance and nature of those communications to third parties, including Google, without the knowledge and informed consent of Plaintiff K.P., Plaintiff J.L., and Massachusetts Subclass Members constitutes a violation of the Massachusetts Right to Privacy Law.

245.    Plaintiff K.P., Plaintiff J.L., and Massachusetts Subclass Members had a reasonable expectation that their communications regarding sensitive, highly personal information would be protected from surreptitious disclosure to third parties.

246.    Defendant's disclosure of Plaintiff K.P.'s, Plaintiff J.L.'s, and Massachusetts Subclass Members' Sensitive Information coupled with individually identifying information constitutes an unreasonable, substantial or serious interference with their privacy.

247.    As a result of Defendant's actions, Plaintiff K.P., Plaintiff J.L., and Massachusetts Subclass Members have suffered harm and injury including, but not limited to, an invasion of their privacy rights.

248.    Plaintiff K.P., Plaintiff J.L., and Massachusetts Subclass Members have been damaged as a direct and proximate result of Defendant's invasion of their privacy and are entitled

CORRECTED COMPLAINT – 59

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

to compensatory and/or nominal damages.

249.    Plaintiff K.P., Plaintiff J.L., and Massachusetts Subclass Members seek appropriate relief for that injury including, but not limited to, damages that will reasonably compensate Plaintiff K.P., Plaintiff J.L., and Massachusetts Subclass Members for the harm to their privacy interests as a result of the intrusions upon their privacy.

250.    Plaintiff K.P., Plaintiff J.L., and Massachusetts Subclass Members are also entitled to punitive damages resulting from the malicious, willful and intentional nature of Defendant's actions, directed at injuring Plaintiff K.P., Plaintiff J.L., and Massachusetts Subclass Members in conscious disregard of their rights. Such damages are needed to deter Defendant from engaging in such conduct in the future.

251.    Plaintiff K.P. and Plaintiff J.L. also seek such other relief as the Court may deem just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and other Class Members, pray for judgment against Defendants as follows:

A.    an Order certifying the Nationwide Class and Massachusetts, Pennsylvania, New York, and Washington Subclasses, and appointing the Plaintiffs and their Counsel to represent the Classes;

B.    equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Sensitive Information of Plaintiffs and Class Members;

C.    injunctive relief requested by Plaintiffs, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests

CORRECTED COMPLAINT – 60

of Plaintiffs and Class Members;

D.     an award of all damages available at equity or law, including, but not limited to, actual, consequential, punitive, statutory and nominal damages, as allowed by law in an amount to be determined;

E.     an award of attorney fees, costs, and litigation expenses, as allowed by law;

F.     prejudgment interest on all amounts awarded; and

G.     all such other and further relief as this Court may deem just and proper.

///

///

///

///

///

///

///

///

///

///

///

///

///

CORRECTED COMPLAINT – 61

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, on behalf of themselves and other members of the proposed Classes, hereby demand a jury trial on all issues so triable.

Dated: January 15, 2026                  Respectfully submitted,


_s/ Paul B. Barton_
Paul B. Barton, OSB No. 100502
paul@olsenbarton.com
OLSEN BARTON LLC
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: (503) 468-5573
Fax: (503) 820-2933
*Attorneys for Plaintiffs*

Mason Barney
mbarney@sirillp.com
Tyler J. Bean
tbean@sirillp.com
Sonjay C. Singh
ssingh@sirillp.com
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091


*Attorneys for Plaintiffs and the Putative Class*

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

4921-1166-0421, v. 1