**Britta E. Warren**, OSB No. 065441
britta.warren@bhlaw.com
BLACK HELTERLINE LLP
805 SW Broadway, Suite 2600
Portland, OR 97205
Telephone: (503) 224-5560
Facsimile: (503) 224-6148

**Daniel E. Rohner\*\***
drohner@shb.com
SHOOK HARDY & BACON LLP
1660 17th St, Suite 450
Denver, CO 80202
Telephone: (303) 285-5300
Facsimile: (303) 285-5301
**\*\****pro hac vice granted*

*Of Attorneys for Defendant Courier Plus, Inc., d/b/a Dutchie*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| K.P., J.L., A.H., B.H., F.Q, and J.C., on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>COURIER PLUS, INC. d/b/a DUTCHIE, GARDEN REMEDIES, INC., NEW ENGLAND TREATMENT ACCESS, LLC, MLH EXPLORATIONS, LLC d/b/a ETHOS CANNABIS, CURALEAF HOLDINGS, INC., and HERBERY OUTFITTERS LLC,<br><br>　　　　Defendants. | Case No. 3:25-cv-02412-YY<br><br>**DEFENDANT COURIER PLUS, INC. d/b/a DUTCHIE'S MOTION TO DISMISS**<br><br>(Oral Argument Requested) |

PAGE i – DEFENDANT DUTCHIE'S MOTION TO DISMISS COMPLAINT

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

SUMMARY OF ALLEGED FACTS.....................................................................................2

I.      Plaintiffs Affirmatively Agreed to Dutchie's Terms and Privacy Policy. ................3

II.     Plaintiff Does Not Allege the Disclosure of Any Actual Protected Information. ....5

        A.      No "Consumer Health Data" Under the My Health My Data Act. ............5

        B.      The Washington Cannabis Patient Protection Act ("CPPA")....................6

        C.      Dutchie Is Not an Entity Subject to the Pennsylvania Medical   Marijuana Act...........7

        D.      Massachusetts General Laws ch. 94I, § 3. ................................................8

        E.      The New York Marihuana Regulation and Taxation Act ............................8

LEGAL STANDARDS ..........................................................................................................9

ARGUMENT........................................................................................................................10

I.      Plaintiffs Fail to Establish Article III Standing Due to Lack of Concrete Injury. .................10

II.     Plaintiffs Fail to State an ECPA Claim (Count IX). ..............................................12

        A.      Dutchie Was a Party to the Communication...........................................12

        B.      The Crime-Tort Exception Does Not Apply...........................................13

        C.      The Contents of a Communication Were Not Intercepted.......................16

III.    Plaintiffs Fail to State a Claim for Invasion of Privacy. ........................................17

        A.      No Intentional Intrusion Occurred. .......................................................18

        B.      Any Alleged Intrusion Was Not Highly Offensive..................................18

IV.     Plaintiffs' Breach of Confidence Claim Should be Dismissed................................19

V.      Plaintiffs' Negligence Claim Fails.........................................................................20

        A.      No Duty or Breach. ..............................................................................20

        B.      No Injury..............................................................................................21

VI.     Plaintiffs Fail to State a Claim for Breach of Implied Contract. ............................23

        A.      No Implied Contract. ...........................................................................23

        B.      No Contract Damages...........................................................................24

VII.    Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law. .............................24

VIII.   Plaintiffs' N.Y. Gen. Bus. Law § 349 Fails as a Matter of Law...........................25

IX.     Plaintiffs K.P. and J.L. Fail to State a Massachusetts Right to Privacy Act Claim. ................26

CONCLUSION....................................................................................................................27

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.B. v. Oregon Clinic*,
321 Or. App. 60, 515 P.3d 387 (2022)..................................................................20

*Allen v. Quicken Loans Inc.*,
No. CV1712352ESMAH, 2018 WL 5874088 (D.N.J. Nov. 9, 2018)....................13

*Alsea Veneer, Inc. v. State*,
318 Or. 33, 862 P.2d 95 (1993) ...........................................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................9, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................9, 10

*Boddie v. ABC*,
881 F.2d 267 (6th Cir. 1989) ...............................................................................15

*Branyan v. Sw. Airlines Co.*,
105 F. Supp. 3d 120 (D. Mass. 2015) ..................................................................27

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)...................................................................................15

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................................12

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) ...............................................................................9

*Clark v. Zwicker & Assocs., P.C.*,
No. 22-CV-10931-ADB, 2024 WL 2025568 (D. Mass. May 7, 2024)..................27

*Colpitts v. Growers*,
No. 20 CIV. 2487 (JPC), 2023 WL 2752161 (S.D.N.Y. Mar. 31, 2023) ..............26

*Matter of Comp. of Gadalean*,
364 Or. 707, 439 P.3d 965 (2019) ........................................................................24

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) aff'd as modified, 148 F.4th 153 (3d Cir.
2025) ......................................................................................................................17

*Corona v. Sony Pictures Ent., Inc.*,
No. 14-CV-09600 RGK EX, 2015 WL 3916744 (C.D. Cal. June 15, 2015) ..........12

*Counterman v. Colorado*,
  600 U.S. 66 (2023)........................................................................................................14

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. 2023)...............................................................................22, 23

*In re DoubleClick Inc. Privacy Litig.*,
  154 F.Supp.2d 497 (S.D.N.Y. 2001).............................................................................14, 16

*Durgan v. U-Haul Int'l Inc.*,
  No. CV-22-01565-PHX-MTL, 2023 WL 7114622 (D. Ariz. Oct. 27, 2023)...................23, 24

*Evergreen W. Bus. Ctr., LLC v. Emmert*,
  354 Or. 790, 323 P.3d 250 (2014) ................................................................................25

*In re Facebook Internet Tracking Litig.*,
  140 F. Supp. 3d 922 (N.D. Cal. 2015) ..........................................................................23

*In re Facebook Internet Tracking Litig.*,
  140 F. Supp. 3d at 931–32 ............................................................................................23

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ..........................................................................22, 23

*In re Google Cookie Placement*,
  806 F.3d at 135–39 .......................................................................................................16

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3d Cir. 2015)...........................................................................................15

*In re Google Inc. Gmail Litig.*,
  No. 13–MD–02430–LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .....................14

*Goulart v. Cape Cod Healthcare, Inc.*,
  No. CV 25-10445-RGS, 2025 WL 1745732 (D. Mass. June 24, 2025) .........................15

*Hornbuckle v. Harris*,
  69 Or. App. 272, 686 P.2d 418 (1984)...........................................................................25

*Humphers v. First Interstate Bank of Oregon*,
  298 Or. 706, 696 P.2d 527 (1985) ................................................................................18, 20

*Jet Parts Eng'g, Inc. v. Quest Aviation Supply, Inc.*,
  No. 15-0539-RSM, 2017 WL 1093205 (W.D. Wash. 2017)..........................................26

*K.L. v. Legacy Health*,
  No. 3:23-cv-1886-SI, 2024 WL 4794657 (D. Or. Nov. 14, 2024) .................................19

*Katz-Lacabe v. Oracle Am., Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023) ..........................................................................13, 14, 17

*Khamooshi v. Politico LLC*,
   786 F. Supp. 3d 1174 (N.D. Cal. 2025) ....................................................................................11

*Kirch v. Embarq Mgmt. Co.*,
   702 F.3d 1245 (10th Cir. 2012) ..............................................................................................12

*Kurowski v. Rush Sys. for Health*,
   683 F. Supp. 3d 836 (N.D. Ill. 2023) ......................................................................................19

*Ladner v. United States*,
   358 U.S. 169 (1958).................................................................................................................15

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) ..................................................................................................9

*Leonard v. McMenamins, Inc.*,
   No. C22-0094-KKE, 2024 WL 4188974 (W.D. Wash. Sept. 13, 2024) ..................................22

*Low v. Linkedin Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..................................................................................22

*Lucas v. Fox News Network, LLC*,
   248 F.3d 1180 (11th Cir. 2001) ..............................................................................................16

*M.R. v. Salem Health Hosps. & Clinics*,
   No. 6:23-CV-01691-AA, 2024 WL 3970796 (D. Or. Aug. 28, 2024) .....................................24

*Mauri v. Smith*,
   324 Or. 476, 929 P.2d 307 (1996) ..........................................................................................18

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
   603 F. Supp. 3d 1183 (S.D. Fla. 2022) ...................................................................................20

*Moyer v. Columbia State Bank*,
   315 Or App 728, 503 P.3d 572 (2021)...............................................................................23, 24

*Nguyen v. Abbott Lab'ys., Inc.*,
   No. 24 CV 8289, 2026 WL 579206 (N.D. Ill. Mar. 2, 2026) ..................................................17

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016)....................................................................................................13

*Nienaber v. Overlake Hosp. Med. Ctr.*,
   733 F. Supp. 3d 1072 (W.D. Wash. 2024)...............................................................................25

*Nienaber v. Overlake Hosp. Med. Ctr.*,
   No. 2:23-CV-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025)..................................22

*Perez-Denison v. Kaiser Found. Health Plan of the Nw.*,
   868 F. Supp. 2d 1065 (D. Or. 2012) .......................................................................................18

PAGE v – DEFENDANT DUTCHIE'S MOTION TO DISMISS COMPLAINT

*Piazza ex rel. Piazza v. Kellim*,
  271 Or. App. 490, 354 P.3d 698 (2015)........................................................................21

*Piazza v. Kellim*,
  360 Or. 58, 377 P.3d 492 (2016) ...............................................................................21

*Popa v. Microsoft Corp.*,
  153 F.4th 784 (9th Cir. 2025) ....................................................................................11

*Razuki v. Caliber Home Loans, Inc.*,
  No. 17CV1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ..................11, 12

*Reed v. Toyota Motor Credit Corp.*,
  301 Or. App. 825, 459 P.3d 253 (2020)........................................................................19

*Scott v. Breeland*,
  792 F.2d 925 (9th Cir. 1986) ......................................................................................9

*Small v. Lorillard Tobacco Co., Inc.*,
  720 N.E.2d 892 (1999)................................................................................................26

*Snipes v. Wilkie*,
  No. 18-cv-03259-TSH, 2019 WL 1283936 (N.D. Cal. Mar. 20, 2019) .................................18

*Spokeo Inc. v. Robins*,
  578 U.S. 330 (2016).....................................................................................................10

*Stanford Health Care v. Blue Cross Blue Shield of N. Carolina, Inc.*,
  No. 21-cv-04598-BLF, 2022 WL 195847 (N.D. Cal. Jan. 21, 2022) .....................................24

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ....................................................................................10

*State v. Weatherwax*,
  193 Wash. App. 667, 376 P.3d 1150 (2016), rev'd, 188 Wash. 2d 139, 392
  P.3d 1054 (2017)...........................................................................................................6

*Stutman v. Chem. Bank*,
  709 N.Y.S.2d 892, 731 N.E.2d 608 (2000)....................................................................26

*Sussman v. ABC*,
  186 F.3d 1200 (9th Cir. 1999) ....................................................................................15

*In re Toys R Us, Inc., Priv. Litig.*,
  No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ..........................................12

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).................................................................................................2, 9, 10

*United States v. Amen*,
  831 F.2d 373 (2d Cir. 1987)........................................................................................13

*United States v. Bowen*,
   127 F.3d 9 (1st Cir. 1997)..........................................................................................15

*United States v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011) .......................................................................................3

*United States v. Kovolas*,
   No. CRIM.A. 96-10265-WGY, 1998 WL 452218 (D. Mass. July 27, 1998) ........................16

*United States v. McHugh*,
   57 F. Supp. 3d 95 (D. Mass. 2014) ...........................................................................15

*Wofse v. Horn*,
   523 F. Supp. 3d 122 (D. Mass. 2021) .......................................................................27

*Wood v. City of Haverhill*,
   No. 1:23-CV-12377-JEK, 2024 WL 4189932 (D. Mass. Sept. 13, 2024)................................12

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) .........................................................................13

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) .....................................................................17

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ...................................................................................16

**Statutes**

35 Pa. Stat. Ann. § 10231.302 .......................................................................................7

35 Pa. Stat. Ann. § 10231.302(a).....................................................................................7

35 Pa. Stat. Ann. § 10231.601 .......................................................................................8

18 U.S.C. § 2510(8) ......................................................................................................16

18 U.S.C. § 2511(1)(1) ..................................................................................................13

18 U.S.C. § 2511(1)(a).............................................................................................12, 14

18 U.S.C. § 2511(1)(a)–(d)............................................................................................14

18 U.S.C. § 2511(2)(d) ............................................................................................13, 14

18 U.S.C. § 2511(a) ......................................................................................................12

18 U.S.C. § 2511(a) ......................................................................................................13

18 U.S.C. § 2511(c) ......................................................................................................12

35 Pa. Stat. Ann. § 10231.1308 ..................................................................................7, 8

Electronic Communications Privacy Act ................................................................. *passim*

Mass. Gen. Laws Ann. ch. 66, § 10 ........................................................................... 8

Mass. Gen. Laws Ann. ch. 94I, § 3 ........................................................................... 8

Mass. Gen. Laws Ann. ch. 214 § 1B ....................................................................... 27

N.Y. Cannabis Law § 32 ......................................................................................... 8, 9

N.Y. Cannabis Law § 34(1) ..................................................................................... 8, 9

N.Y. Gen. Bus. Law § 349 ......................................................................................... 26

New York Marihuana Regulation and Taxation Act .................................................. 8

RCW 19.373.010(8)(a) ................................................................................................ 5

RCW 19.373.010(8)(b) ............................................................................................... 5

RCW 19.373.030(1)(b) ............................................................................................... 5

RCW 69.50.101 ........................................................................................................... 6

RCW 69.50.204(c)(22) ............................................................................................... 6

RCW 69.50.308 ........................................................................................................... 6

RCW 69.50.360(3) ....................................................................................................... 3

RCW 69.51A.005(1)(b) ............................................................................................... 6

RCW 69.51A.010(24)(a), (c), (h) .............................................................................. 6

RCW 69.51A.030(2)(a) ............................................................................................... 6

RCW 69.51A.230 .......................................................................................................... 6

RCW 69.51A.240(1)(b) ............................................................................................ 6, 7

RWC 69.51A ................................................................................................................ 6

Wash. Rev. Code Ann. § 19.373.010(8)(b)(iv) .......................................................... 5

Wiretap Act ................................................................................................................ 13

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 9

Fed. R. Evid. 201(b)......................................................................................................................3

Restatement (Second) of Torts § 652B cmt. b (1977) ................................................................18

U.S. Const. art. III...........................................................................................................2, 9, 10, 12

## LR 7-1 CERTIFICATION

In compliance with Local Rule 7-1(a), counsel for Defendant Courier Plus, Inc., d/b/a Dutchie and Plaintiffs met and conferred in good faith and were unable to resolve the issues raised in the current motion.

## MOTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Courier Plus, Inc., d/b/a Dutchie ("Dutchie"), moves the Court for an order dismissing Plaintiffs' Complaint with prejudice.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Throughout the country plaintiffs have filed a wave of lawsuits seeking to collect massive damages awards from businesses that use "pixel" technologies on their websites. When a user visits a website that contains a pixel, information about the visit is sent to the entity that created the pixel which then uses the data to assist with advertising. These technologies are ubiquitous; they are used by countless businesses, healthcare entities, and government agencies to improve the functionality and advertising on their websites.

Dutchie provides ecommerce software to cannabis dispensaries, enabling customers to make reservations to purchase their products for pickup or delivery (the "Platform"). Plaintiffs allege that Dutchie disclosed that they: (1) have medical cannabis cards; (2) have purchased medical and/or recreational cannabis; and (3) the specific cannabis products purchased.[2] Complaint ("Compl.") ¶ 3. But none of this information is protected under any statute or

---

[1] Defendant has also contemporaneously filed a Motion to Compel Arbitration ("MTCA") with a supporting Declaration. As set forth in the MTCA, by signing up for a Dutchie account and making reservations to purchase cannabis from various retailers through the Dutchie Platform, each Plaintiff repeatedly (in some cases over 200 times) acknowledged and agreed to be bound by Dutchie's Terms (including its arbitration provision) and its Privacy Policy. By seeking relief through Fed. R. Civ. P. 12(b)(6), Defendant does not waive its primary contractual right to have each of Plaintiffs' claims resolved through mandatory and binding arbitration.

[2] Plaintiffs' Complaint defines this information as "Sensitive Information."

---

PAGE 1 – DEFENDANT DUTCHIE'S MOTION TO DISMISS COMPLAINT

regulation invoked in the Complaint, nor does it constitute "consumer health data." Plaintiffs' claims fail for this threshold reason alone.

Further, Plaintiffs lack Article III standing to bring these claims. As the Supreme Court has made clear, an injury in law is not an injury in fact. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Plaintiffs have not alleged and cannot establish that any action taken by Dutchie caused them concrete harm. Plaintiffs' Complaint fails to allege any facts about their visit to the Platform or any reservations they made, instead expounding at length only about what technologies *might* do. Plaintiff fails to establish Article III standing because ultimately they do not allege a concrete injury cognizable under any of the asserted statutory or common law claims.

Beyond these fundamental defects, Plaintiffs' Complaint suffers from two additional flaws that foreclose every cause of action. First, as discussed in detail below, the "Sensitive Information" allegedly disclosed is not covered by any of the statutes or regulations Plaintiffs cite. Second, Plaintiffs allege that they created a Dutchie account which means they expressly consented to Dutchie's Terms and Conditions and Privacy policies, which defeat each claim. Plaintiffs' Complaint should be dismissed in its entirety without leave to amend.

## SUMMARY OF ALLEGED FACTS

Dutchie provides ecommerce software to cannabis dispensaries. Dutchie's software is embedded directly into the dispensary's website for a seamless ordering experience that is indistinguishable from the website itself, and for additional exposure of dispensaries to customers, the company also aggregates the dispensaries in their online marketplace. Plaintiffs allege that they made reservations to purchase medical marijuana from various dispensaries through the Platform and that the advertising technology on the website disclosed their Sensitive Information. *Id.* ¶¶ 13, 20-21, 26-27, 31-32, 38-39, 44-45, 50-51. Plaintiffs' Complaint provides a general description of pixel technology along with hypothetical scenarios about how an individual *could* interact with Dutchie's Platform. *Id.* ¶ 94 ("the information provided in Figure 1 is an exemplar" "is not Plaintiffs' information"). But when it comes to Plaintiffs' own

---

interactions with Dutchie's Platform they have very little to say. Specifically, they allege that they made purchases through the Platform between 2024 and 2025, had medical cannabis cards, and were logged into their Google accounts at the time of purchase. *Id.* ¶¶ 18–53.[3] Plaintiffs do not describe the information they provided through the Platform nor the products they made reservations to purchase, nor do Plaintiffs identify any specific information about *them* that was allegedly transmitted to third parties.

## I.       Plaintiffs Affirmatively Agreed to Dutchie's Terms and Privacy Policy.

Plaintiffs allege that Dutchie "*never* obtained authorization" and that they "gave no informed consent for information about their Sensitive Information to be transmitted to the third parties." Compl. ¶¶ 14, 93, 98-99, 102, 104, 159. Contrary to those bald and demonstrably false assertions, verifiable facts about which this Court can and should take judicial notice show that all Dutchie account holders and persons who make a cannabis reservation through the Dutchie Platform—including Plaintiffs—must provide affirmative consent to the use of third-party tracking pixels *before* submitting any personal information.[4]

Plaintiffs each alleged that they made purchases at various dispensaries through the Dutchie Platform in 2024 and 2025. Compl. ¶¶ 13, 20-21, 26-27, 31-32, 38-39, 44-45, 50-51. Plaintiffs, however, are unable to make a purchase through the Dutchie Platform. When a consumer completes the checkout on Dutchie's Platform, they are placing a reservation for pickup or delivery. No payment occurs at this stage, no products are received, and the consumer must go to the dispensary in-store to complete the actual purchase at the point of sale. However,

---

[3] Plaintiffs are unable to make purchases directly through the Dutchie Platform and merely placed a reservation for pickup or delivery. Notably, Washington prohibits cannabis retailers from making sales except "on the premises of the retail outlet." RCW 69.50.360(3).

[4] As set forth below and in the accompanying Request for Judicial Notice, the Court may take judicial notice of Dutchie's website because its authenticity "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), and because Plaintiff's complaint refers to the website, it is central to the plaintiff's claim, and its authenticity cannot reasonably be questioned. *see United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011).

---

PAGE 3 – DEFENDANT DUTCHIE'S MOTION TO DISMISS COMPLAINT

Plaintiffs correctly allege that before making their reservation Plaintiffs each registered and created an account through the Dutchie Platform. *Id.* at ¶ 92. Such registration required the creation of a Dutchie user account and agreement to certain Terms and Conditions ("Terms"). *See* Request for Judicial Notice ("RFJN") Ex. A (Sign-Up Page). In addition, to make a reservation, Plaintiffs were required to input their medical marijuana card details, fill out payment and billing information and click a "Place Order" button, before which Plaintiffs were expressly notified, "By continuing you agree to our **Terms of Service** and consent to receiving automated text messages or other communications for order updates. For information on our privacy practices and commitment to protecting your privacy, please review our **Privacy Policy**. RFJN Ex. B (Payment Page), Ex. C (Terms), and Ex. D (Privacy Policy).

Dutchie's Terms expressly incorporates by reference its Privacy Policy. Dutchie's Privacy Policy contains a specific section devoted to "Cookies and Tracking Technologies" (which are the exact technologies about which they now complain):

> **Cookies and Tracking Technologies**: When you visit or otherwise interact with our Services, we may automatically collect information about you using cookies, device identifiers, pixels and similar technologies. We use this information for various purposes, including to make the Services function properly, understand how you use the Services, personalize your experience, gather usage data on our Services, measure, manage, display and customize the advertisements you see within the Services or elsewhere and improve your overall experience while using the Services. A "cookie" is a piece of information sent to your browser by a website you visit. Cookies can be stored on your computer for different periods of time. Some cookies expire after a certain amount of time, or upon logging out (session cookies), others survive after your browser is closed until a defined expiration date set in the cookie (as determined by the third party placing it), and help recognize your computer when you open your browser and browse the Internet again (persistent cookies). For more details on cookies please visit **All About Cookies**.
> On most web browsers, you will find a "help" section on the toolbar. Please refer to this section for information on how to receive a notification when you are receiving a new cookie and how to turn cookies off.

Dutchie's Privacy Policy further contains a section specifically devoted to "**Analytics**":

> **Analytics**: We use third-party analytics providers who may deploy cookies, pixels and similar technologies to the Services in order to allow us to understand usage of the Services as well as the performance of advertisements. For example, we use Google Analytics, a web analytics service provided by Google, Inc. which uses cookies to help us analyze how users use the websites and enhance your experience when you use our Services. For more information on how Google uses this information, click **here**.

In short, Plaintiffs' created an account before making the alleged reservations on Dutchie's Platform, which in turn required acceptance of Dutchie's Terms. Thereafter, with *each reservation,* Plaintiffs repeatedly agreed to be subject to the Terms and the Privacy Policy, which in turn informed Plaintiffs that Dutchie's Platform had installed Google Analytics and other similar technologies and that unless they opt out, Dutchie will collect and use information from their web activity and cookies, along with certain personal information. Plaintiffs do not allege they opted out of Dutchie's use of cookies. At bottom, Plaintiffs consented to Dutchie's Terms and Privacy Policy upon account creation and each time they placed a reservation for a purchase. Plaintiffs' repeated consent cuts across each of their claims, warranting dismissal of the Complaint with prejudice.

## II.    Plaintiff Does Not Allege the Disclosure of Any Actual Protected Information.

### A.    *No "Consumer Health Data" Under the My Health My Data Act.*

Washington's MHMDA generally prohibits businesses from "shar[ing] any consumer health data." RCW 19.373.030(1)(b). The statute defines "[c]onsumer health data" as "personal information that is linked or reasonably linkable to a consumer and that identifies the consumer's past, present, or future physical or mental health status." RCW 19.373.010(8)(a). It lists various conditions that constitute "physical or mental health status," see RCW 19.373.010(8)(b), but Plaintiffs' Complaint alleges Dutchie's Platform disclosed one type in particular; their "[u]se or purchase of prescribed medication[.]" Compl. ¶ 127 (citing Wash. Rev. Code Ann. § 19.373.010(8)(b)(iv)).

Plaintiffs' theory falls flat. Medical cannabis is not a "prescribed medication" under Washington's Medical Cannabis Law, RWC 69.51A. In Washington, medical cannabis is

*authorized,* not prescribed. RCW 69.51A.005(1)(b) ("An authorization is not a prescription as defined in RCW 69.50.101."). Indeed, marijuana remains a schedule I controlled substance and one can never obtain a prescription for such a schedule I controlled substance. Even in the context of medical marijuana, a user obtains an "authorization," not a prescription, from a health care provider. *State v. Weatherwax*, 193 Wash. App. 667, 376 P.3d 1150 (2016), rev'd, 188 Wash. 2d 139, 392 P.3d 1054 (2017) (reversed on other grounds); *see* RCW 69.50.204(c)(22); RCW 69.50.308; RCW 69.51A.030(2)(a). Further, medical cannabis authorizations are issued for many reasons, from "glaucoma" to "traumatic brain injury" to "cancer," RCW 69.51A.010(24)(a), (c), (h), so the fact that Plaintiffs hold a medical cannabis card and were issued a medical cannabis authorization does not identify anything specific about their particular physical or mental health status. Ultimately, Plaintiffs act of reserving medical cannabis or filtering a dispensary's offerings for medical marijuana does not constitute consumer health data because it does not reveal Plaintiffs' "use or purchase of prescribed medication" nor does it disclose anything specific about their physical or mental health status.

## B.    The Washington Cannabis Patient Protection Act ("CPPA")

The Sensitive Information that Plaintiffs allege was disclosed is not protected under the CPPA. The CPPA prohibits the disclosure of "information received from the medical cannabis authorization database in violation of RCW 69.51A.230 including, but not limited to, qualifying patient or designated provider names, addresses, or amount of cannabis for which they are authorized[.]" RCW 69.51A.240(1)(b).

First, the information at issue, *i.e.*, that Plaintiffs possess a medical marijuana card and made reservations to purchase medical and/or recreational marijuana, was not "received from the medical cannabis authorization database." RCW 69.51A.240(1)(b). Plaintiffs acknowledge that they personally provided their respective medical marijuana card details through the Platform to various dispensaries. Compl. ¶ 92. Likewise, the act of making a reservation to purchase marijuana is not analogous to "patient or designated provider names, addresses, or amount of cannabis for which they are authorized[.]" RCW 69.51A.240(1)(b).

Second, the products that Plaintiffs allegedly reserved for subsequent in-store purchase also were not "received from" the medical cannabis authorization database. *Id.* These product reservations do not disclose Plaintiffs' name, contact information, or amount of cannabis for which Plaintiffs were authorized. *See id.* Instead, the reservations merely reflect the quantity *someone* reserved, which bears no necessary relationship to a person's authorized amount. Critically, Plaintiffs do not allege what products they actually purchased and therefore cannot plausibly claim that the products constitute protected information without additional factual support. Because none of the Sensitive Information at issue was sourced from the medical cannabis authorization database or falls within the categories protected by the CPPA, Dutchie disclosed no Sensitive Information under Washington law.

### C. Dutchie Is Not an Entity Subject to the Pennsylvania Medical Marijuana Act.

Dutchie is **not** an entity covered by the Pennsylvania Medical Marijuana Act. Section 302 provides that "[a]ll information obtained by the department relating to patients, caregivers and other applicants shall be confidential and not subject to public disclosure," including "[i]ndividual identifying information about patients and caregivers." 35 Pa. Stat. Ann. § 10231.302(a). Plaintiffs allege that "[a]n entity that discloses such information is guilty of a third degree misdemeanor." *Id.* § 10231.1308; Compl. ¶ 117. That is incorrect. The statute expressly limits liability to " a practitioner, caregiver, patient, employee, financial backer, operator or principal of any medical marijuana organization, health care medical organization or university participating in a research study under Chapter 19, 1 and an employee, financial backer, operator or principal of a clinical registrant or academic clinical research center under Chapter 20." *Id.* § 10231.1308. Dutchie does not fall within any of these categories. It is not an operator or principal of a "medical marijuana organization," a term narrowly defined in the statute to include only grower/processors and dispensaries. *Id.* § 10231.601. Dutchie is neither. Accordingly, Dutchie is not subject to this statutory provision, and any alleged disclosure is not a violation of the Act.

---

PAGE 7 – DEFENDANT DUTCHIE'S MOTION TO DISMISS COMPLAINT

D.     *Massachusetts General Laws ch. 94I, § 3.*

As explained with respect to the state of Washington above, the alleged information at issue—that Plaintiffs possess a medical marijuana card and made a reservation to purchase medical and/or recreational marijuana—was not received from the "confidential medical cannabis authorization database." Mass. Gen. Laws Ann. ch. 94I, § 3. Plaintiffs concede that they themselves provided their respective medical marijuana card details through the Platform to various dispensaries. Compl. ¶ 92. Plaintiffs further misconstrue Section 3's exemption from public disclosure. Section 3 states that, "[i]ndividual names and other identifying information shall be exempt from section 10 of chapter 66, and not subject to disclosure…" Mass. Gen. Laws Ann. ch. 94I, § 3. Section 10 of chapter 66 governs public records requests. Here, no public records request is at issue, Rather, Plaintiffs allege that Dutchie obtained the information directly from Plaintiffs. *See generally* Mass. Gen. Laws Ann. ch. 66, § 10. Therefore, the public disclosure exemption under Section 3 is irrelevant. Dutchie did not disclose any information protected by Massachusetts General Laws ch. 94I § 3.

E.     *The New York Marihuana Regulation and Taxation Act*

Plaintiffs contend that Dutchie violated the New York Marihuana Regulation and Taxation Act ("MRTA") by purportedly disclosing their Sensitive Information to third parties. Under the MRTA, Section 32 governs how registered organizations validate medical cannabis certifications. NY CLS § 32. The statute defines a registered organization as "a for-profit business entity or not-for-profit corporation organized for the purpose of acquiring, possessing, manufacturing, selling, delivering, transporting, distributing or dispensing cannabis for certified medical use." *Id.* § 34(1). Dutchie does not fall under this definition.

Dutchie is a technology company that provides software to dispensaries, it is not a business "organized for the purpose of acquiring, possessing, manufacturing, selling, delivering, transporting, distributing or dispensing cannabis for certified medical use." *Id.* Importantly, Plaintiffs can only make a reservation to purchase cannabis through the Dutchie Platform—they

PAGE 8 – DEFENDANT DUTCHIE'S MOTION TO DISMISS COMPLAINT

cannot actually complete the transaction there. Plaintiffs' effort to apply Section 32's recordkeeping and access requirements to Dutchie is entirely misplaced.

## LEGAL STANDARDS

This Court must dismiss actions that lack subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Plaintiff, as "the party seeking to invoke the [] jurisdiction" of an Article III federal court, bears "the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

"A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion,* 594 U.S. at 423. For a Rule 12(b)(1) facial attack on subject-matter jurisdiction, a court applies the same standard as it would a motion to dismiss under Rule 12(b)(6). *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

To survive a motion to dismiss for failure to state a claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It is not enough to "simply recite the elements of a cause of action," but the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). For this reason, courts do not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Instead, courts must separate and disregard the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678–79. Any remaining factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the complaint pleads facts "'merely consistent with' a defendant's liability, it 'stops short of the line

between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

ARGUMENT

**I.    Plaintiffs Fail to Establish Article III Standing Due to Lack of Concrete Injury.**

Plaintiffs do not and cannot allege any cognizable injury and thereby lack Article III standing to assert any of their claims. "Only those plaintiffs who have been "*concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Trans* Union, 594 U.S. at 427 (emphasis in original). Whether a harm qualifies as "concrete" hinges on whether the alleged injury to the plaintiff bears a "close relationship" to a harm "traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 427. A "bare procedural violation[] divorced from any concrete harm ... does not suffice for Article III standing." *Id.* at 440. An injury in fact does not necessarily exist merely because "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo Inc. v. Robins*, 578 U.S. 330, 341 (2016).

Here, Plaintiffs' Complaint falls short of establishing they suffered any injury, let alone one sufficient to confer Article III standing. Plaintiffs never claim they picked up or paid for the cannabis they allege they placed reservations for on the Dutchie Platform. Instead, Plaintiffs' claim they were injured *solely* by creating accounts on Dutchie's Platform to place reservations for cannabis, because Dutchie allegedly disclosed to third parties the fact that Plaintiffs made reservations but did not disclose Plaintiffs' medical marijuana card details nor confirmed whether the reservations were *actually* picked up or paid for. Plaintiffs have failed to allege any concrete injury. Plaintiffs never paid Dutchie for which they might seek reimbursement or disgorgement. At bottom, Plaintiffs simply cannot articulate how they were concretely harmed by the data transmissions alleged in the Complaint.

Most importantly—as explained *supra* pp. 6-10—the information allegedly disclosed is *not* medical information. Accordingly, Plaintiffs' medical information could not even plausibly have been disclosed to any third parties. Plaintiffs' entire theory of injury is based on their

contention that their medical information was disclosed when the Platform transmitted "events" to third parties, despite the information not qualifying as medical information and the Complaint demonstrating the opposite being true. *See supra* pp. 6-10; Figs. 1, 2. This fact alone warrants dismissal of the entire FAC for failure to allege a concrete injury. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (under *TransUnion*, finding no concrete injury where Plaintiff "identifies no embarrassing, invasive, or otherwise private information collected" by Defendant's website).

Plaintiffs' allegations that Dutchie received "substantial financial benefits" and "substantial, quantifiable value" from their alleged collection and use of Plaintiffs' Sensitive Information— "without providing any value or benefit to Plaintiffs"—fails to allege any concrete injury, because Plaintiffs do not allege that any such benefits resulted in actual harm to Plaintiffs.  *See Compl.* ¶ 227; *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1182 (N.D. Cal. 2025) (plaintiffs failed to allege that they "suffered economic harm because Defendant unjustly profited from the use of their data").

Plaintiffs' allegation that Dutchie "failed to provide Plaintiffs and Class Members with the full value of the services for which they paid, which included a duty to maintain [] confidentiality," fails because Plaintiffs do not allege that they paid ***anything*** to Dutchie for services—let alone that they paid a premium for Dutchie to maintain confidentiality of information. Compl. ¶ 227; *see Razuki v. Caliber Home Loans, Inc.*, No. 17CV1718-LAB (WVG), 2018 WL 6018361, at *1 (S.D. Cal. Nov. 15, 2018) (finding that plaintiff "does not provide any information to show that he paid a premium for [defendant] to provide reasonable and adequate security measures.").  Finally, courts routinely reject allegations, such as Plaintiffs', that the supposed disclosure of their personal information "diminished the value" of such information. *See, e.g. Razuki*, 2018 WL 6018361, at *1 (finding that "claim alleging diminution of value of [plaintiff's] personal data fails to allege enough facts to establish how his personal information is less valuable as a result of the breach"); *Corona v. Sony Pictures Ent., Inc.*, No. 14-CV-09600 RGK EX, 2015 WL 3916744, at *3 (C.D. Cal. June 15, 2015) (alleged "diminution in the value and/or use of" PII was not a cognizable injury, absent

. . . .

---

PAGE 11 – DEFENDANT DUTCHIE'S MOTION TO DISMISS COMPLAINT

authority "that an individual's personal identifying information has any compensable value in the economy at large").

Thus, Plaintiffs fail to establish standing under Article III and for that reason alone, all of their claims should be dismissed.

## II.     Plaintiffs Fail to State an ECPA Claim (Count IX).

To state an Electronic Communications Privacy Act ("ECPA") claim, Plaintiffs must allege facts demonstrating Dutchie "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device, and (6) that the communication was intercepted contemporaneously." *Wood v. City of Haverhill*, No. 1:23-CV-12377-JEK, 2024 WL 4189932, at *16 (D. Mass. Sept. 13, 2024). Plaintiffs' claims fail, because they do not allege an unauthorized interception, use, or disclosure of an electronic communication in violation of 18 U.S.C. sections 2511(a), (c), or (d).[5]

### A.     *Dutchie Was a Party to the Communication.*

Fatal to Plaintiffs' claim is that "the consent of one party is a complete defense to a Wiretap Act claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014). The ECPA explicitly states that "[i]t shall not be unlawful" to intercept a communication "where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). Here, Plaintiffs' claim under section 2511(1)(1) fails because Plaintiffs consented to the communication and consented to the activity to which they now object. *See supra* pp. 4-6.

---

[5] Plaintiffs breezily allege that Dutchie violated ECPA by "procur[ing] another person to intercept, the electronic communications of Plaintiffs and Class Members, in violation of 18 U.S.C. § 2511(1)(a)," Compl. ¶ 214, but the Court can disregard this stray allegation because ECPA does not provide a civil remedy against someone for procuring another's interception. *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246–47 (10th Cir. 2012) (noting Congress specifically excluded "procures" from ECPA's civil liability provision despite ECPA predecessor's including it); *see In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015) ("there is simply no secondary liability (such as aiding and abetting) under the ECPA"); *In re Toys R Us, Inc., Priv. Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *7 (N.D. Cal. Oct. 9, 2001) (same).

---

PAGE 12 – DEFENDANT DUTCHIE'S MOTION TO DISMISS COMPLAINT

Dutchie also consented to the alleged interception. Courts in the Ninth Circuit have sometimes held that third-party developers (*i.e.*, Meta, Google, Oracle) are not parties to electronic communications. *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 (N.D. Cal. 2023) (disagreeing with Oracle's argument that it was "an extension of the website operators, rather than an outsider."). The present case, however, is brought against Dutchie—not Meta or Google. Because Plaintiffs communicated with Dutchie (the "website operator") directly, Dutchie is surely a party to that communication. *Id.*

Here, Dutchie's consent alone is sufficient to defeat the ECPA claim. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1026 ("[T]he consent of one party is a complete defense to a Wiretap Act claim."); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) (dismissing ECPA claim against website operator because the operator was a party to the allegedly intercepted communications); *Allen v. Quicken Loans Inc.*, No. CV1712352ESMAH, 2018 WL 5874088, at *4 (D.N.J. Nov. 9, 2018) (same). It follows that Dutchie, by allegedly deploying advertising pixels on its Platform, has necessarily consented to any alleged interception for purposes of section 2511(a). *See United States v. Amen*, 831 F.2d 373, 378 (2d Cir. 1987) ("Congress intended the consent requirement to be construed broadly."). Therefore, the alleged interception is not unlawful and Plaintiffs' claim is foreclosed, unless the matter falls within an exception to the one-party consent rule.

### B.    The Crime-Tort Exception Does Not Apply.

Plaintiffs' reliance on the crime-tort exception to ECPA's single-party consent rule is unavailing. The crime-tort exception to the one-party consent rule applies when a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States." 18 U.S.C. § 2511(2)(d). In analyzing whether the crime-tort exception applies, the Court's inquiry can start and stop with the statute's language. Under the ECPA, the interception must be done *intentionally*, 18 U.S.C. § 2511(1)(a), but for the crime-tort exception to apply, there is a separate and additional *mens rea* requirement—that the interception be done "*for the purpose of committing* any criminal or

tortious act." *Id.* § 2511(2)(d). Congress's repeated use of "intentionally" in § 2511(1)(a)–(d), evidences its deliberate choice to then use "purpose" in §(2)(d). As the Supreme Court explained, "[p]urpose is the most culpable" mental state "and the hardest to prove" requiring that one "consciously desires" a result. *Counterman v. Colorado*, 600 U.S. 66, 78-79 (2023).

The question here then is whether Plaintiffs adequately allege that Dutchie's *purpose* in using advertising technology was to act criminally or negligently. The answer is plainly no. Plaintiffs allege Dutchie "received compensation in the form of advanced advertising services and cost-effective marketing" Compl. ¶ 9, 105-106, 198; *see also, e.g.*, *In re Google Inc. Gmail Litig.*, No. 13–MD–02430–LHK, 2014 WL 1102660, at *18, n.13 (N.D. Cal. Mar. 18, 2014) (quoting *In re DoubleClick Inc. Privacy Litig.*, 154 F.Supp.2d 497, 518 (S.D.N.Y. 2001)) ("Alleged interceptions fall within the tort or crime exception only where the "primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously' . . . [and] cannot apply where the interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.'"); *Katz-Lacabe*, 668 F. Supp. 3d at 945 (same). Because Dutchie's alleged purpose for using the pixels was to improve marketing, a lawful purpose, the crime-tort exception does not apply. *See Goulart v. Cape Cod Healthcare, Inc.*, No. CV 25-10445-RGS, 2025 WL 1745732 (D. Mass. June 24, 2025) (dismissing ECPA claim where complaint "fail[ed] to plausibly allege that [defendant's] 'primary motivation' or 'determinative factor' in disclosing plaintiffs' personal health information through the software-tracking technology … was for the purpose of committing a criminal violation or tort, as opposed to commercial gain or convenience").

Importantly, the crime-tort exception also "requires that the interceptor *intend* to commit a crime or tort *independent of the act of recording itself*." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). "[I]t is the *use* of the interception with *intent to harm* rather than the fact of interception that is critical to liability." *Boddie v. ABC*, 881 F.2d 267, 270 (6th Cir. 1989). "Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere." *Sussman v. ABC*, 186 F.3d 1200, 1202–03 (9th Cir. 1999); *see also In re Google Inc.*

*Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (holding that the crime-tort exception did not apply to similar technology because the plaintiffs did not plead any "tortious or criminal *use* of the acquired internet histories"); *United States v. McHugh*, 57 F. Supp. 3d 95, 100 (D. Mass. 2014) (crime-tort exception "is to be construed narrowly").[6]

Plaintiffs allege Dutchie intercepted the communication "for the purpose of committing a tortious act." Compl. ¶ 220. Specifically, the tortious purpose was "invasion of privacy" and other laws relating to medical marijuana. *Id.* ¶¶ 220, 223. As explained above, Dutchie did *not* violate any of the laws or regulations referenced in the Complaint. Further, even if Dutchie's alleged conduct had potentially violated one of these laws (it did not), Plaintiffs have not sufficiently alleged that Dutchie had an unlawful *purpose* beyond what was accomplished by the collection of their data—and that is what matters under the crime-tort exception. *See United States v. Kovolas*, No. CRIM.A. 96-10265-WGY, 1998 WL 452218, at *4 (D. Mass. July 27, 1998) (rejecting plaintiff's "superficial logic" that "because the recording itself was made in violation of state law, it was made for the purpose of violating state law"); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d at 516 ("[T]he commission of a tortious act [does] not prove a tortious purpose."); *see id.* at 518 (finding "plaintiffs clearly allege that DoubleClick has committed a number of torts" but "nowhere have they alleged that DoubleClick's primary motivation or a determining factor in its actions has been to injure plaintiffs tortiously"); *Lucas v. Fox News Network, LLC*, 248 F.3d 1180 (11th Cir. 2001) ("Because the complaint does not allege that defendants intercepted a communication for the purpose of committing any criminal or tortious act, it fails to state a claim."). At bottom, Plaintiffs cannot establish that the crime or fraud exception applies to their claims.

---

[6] Moreover, and further requiring narrow construction, the ECPA imposes criminal penalties, so under the rule of lenity, any ambiguities in the statute must be resolved in Dutchie's favor. *See United States v. Bowen*, 127 F.3d 9, 13–14 (1st Cir. 1997) ("[T]he rule of lenity means that 'the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.'") (quoting *Ladner v. United States*, 358 U.S. 169, 178 (1958)).

### C.     The Contents of a Communication Were Not Intercepted.

Finally, Plaintiffs ECPA claim fails for another reason: Plaintiffs do not plausibly allege facts showing that the *contents* of any communication were acquired by any unauthorized party. "Contents" means "information concerning the substance, purport, or meaning" of the communication. 18 U.S.C. § 2510(8). Courts have interpreted contents as referring to "the intended message conveyed by the communication" and not including "record information" such as routing/record information or the name, address, or identity of a customer. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014); *In re Google Cookie Placement*, 806 F.3d at 135–39.

First, Plaintiffs allege that the pixels intercepted communications including "the reasons for their appointment, the dates of their appointment, and the location of their appointment." Comp. ¶ 217. Strikingly, there is not a place on the Dutchie Platform to schedule an appointment. The Court should not consider this inaccurate allegation.

Second, the names of products that Plaintiffs allegedly reserved for in-store purchase, *see* Compl. ¶¶ 3, 96, Figs. 1, 2, merely reflect clicks on the website, not the contents of communications. *See Katz*-Lacabe, 668 F. Supp. 3d at 945, n.9 ("webpage titles, webpage keywords, … page visits, purchase intent signals, and add-to cart actions" plus "referrer URLs" not contents); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ("keystrokes, mouse clicks, pages viewed, … shipping and billing information[,] … date and time of the visit, the duration of the visit, Plaintiff's IP address, [and] her location" not contents). This is also true of the product being labeled medicinal, the payment method and the delivery method. As explained above, users are able to place reservations for pick up or delivery. No payment occurs on the website, no products are received, and the user must go to the dispensary in-store, or via delivery (depending on state law), to complete the actual purchase through the specific dispensary's point of sale. Plaintiffs do not allege (because they cannot) that the details of point of sale transaction, whether the purchase was finalized, how much was paid, and which products were actually obtained, was tracked by the pixels on Dutchie's Platform. At best, the

information allegedly disclosed shows that *someone* browsed a dispensary menu and expressed interest in certain products. None of these pieces of information reveal the contents of the communication. *Id.; see, e.g.*, *Nguyen v. Abbott Lab'ys., Inc.*, No. 24 CV 8289, 2026 WL 579206, at *4 (N.D. Ill. Mar. 2, 2026) ("[t]he fact that a form was completed, a button to subscribe was clicked, or a user was female is distinguishable from the kind of [PHI defendant] would need to disclose to be liable under the ECPA"); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70 (W.D. Pa. 2023) aff'd as modified, 148 F.4th 153 (3d Cir. 2025) (navigating through website's multiple pages "not the substance of a communication").

Finally, the fact that Plaintiffs were required to provide the details of their medical cannabis card to make reservations for cannabis products is not the contents of a communication. Indeed, Plaintiffs' screenshots confirm that Google received no information related to the details of Plaintiffs' cards. Fig. 2. Accordingly, Plaintiffs' ECPA claims should be dismissed.

### III.    Plaintiffs Fail to State a Claim for Invasion of Privacy.

To succeed on a claim for intrusion upon seclusion under Oregon common law, a plaintiff must prove three elements: "(1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person." *Mauri v. Smith*, 324 Or. 476, 483, 929 P.2d 307 (1996). The first element of an invasion of privacy claim on an intrusion upon seclusion theory is "an intentional intrusion, physical or otherwise." *Id.* at 483. An intrusion "may be by some [ ] form of investigation or examination into his private concerns." *Perez-Denison v. Kaiser Found. Health Plan of the Nw.*, 868 F. Supp. 2d 1065, 1090 (D. Or. 2012) (quoting Restatement (Second) of Torts § 652B, cmt. b (1977)). An intrusion occurs only when the defendant acts without the plaintiff's permission, consent, or authorization and is intentional "if the actor either desires to cause an unauthorized intrusion or believes that an unauthorized intrusion is substantially certain to result from committing the invasive act in question." *Mauri*, 324 Or. at 484 (citations omitted). The Oregon Supreme Court concluded, where the defendant did not "pry into any personal facts that he did not know," that "[t]he point of the claim against [the

PAGE 17 – DEFENDANT DUTCHIE'S MOTION TO DISMISS COMPLAINT

defendant] is not that he pried into a confidence *but that he failed to keep one*." *Humphers v. First Interstate Bank of Oregon,* 298 Or. 706, 771, 696 P.2d 527 (1985) (emphasis added). Here, Plaintiffs fail to allege an intentional intrusion, or that any intrusion was highly offensive to a reasonable person.

### A.    *No Intentional Intrusion Occurred.*

Where a party voluntarily discloses information, an intentional intrusion cannot occur. *See, e.g.*, *Snipes v. Wilkie*, No. 18-cv-03259-TSH, 2019 WL 1283936, at *7 (N.D. Cal. Mar. 20, 2019) (dismissing intrusion upon seclusion claim where the plaintiff voluntarily disclosed the information at issue). Plaintiffs assert that Dutchie's alleged disclosure to third parties was an intrusion. This is not so. Plaintiffs voluntarily accepted providing information regarding their medical cannabis card details and reservation details to Dutchie through the Dutchie Platform. Dutchie was a party to Plaintiffs' data, "not an unknown accessor or pilferer of data." *See K.L. v. Legacy Health*, No. 3:23-cv-1886-SI, 2024 WL 4794657, at *7 (D. Or. Nov. 14, 2024) (dismissing invasion of privacy claim where "[d]efendant was a party to Plaintiff's confidential data and its custodian, not an unknown accessor or pilferer of data."). Thus, Dutchie did not intrude into Plaintiffs' privacy to obtain any information. *see also Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2023) ("Even drawing all inferences in Kurowski's favor, the only plausible conclusion the Court can arrive at is that the allegedly harmful intrusion here, if any, was accomplished by third parties. . . . [Defendant] cannot plausibly be considered to have intruded on, intercepted, or 'bugged' private communications that it was always the intended recipient of."). Accordingly, Plaintiffs fail to sufficiently allege any actual intrusion.

### B.    *Any Alleged Intrusion Was Not Highly Offensive.*

When determining whether an intrusion is "highly offensive," courts consider "the extent of the intrusion, the context, conduct and circumstances surrounding the intrusion, the defendant's motives, the setting into which defendant intruded and the plaintiff's expectation of privacy." *Reed v. Toyota Motor Credit Corp.*, 301 Or. App. 825, 836 459 P.3d 253 (2020).

Here, any alleged intrusion cannot be considered highly offensive to a reasonable person as a matter of law. As explained above, Plaintiffs did not have a reasonable expectation of privacy when using Dutchie's Platform. When creating their accounts and during *each* reservation, Plaintiffs were directed to the Terms and Privacy Policy which informed them that their use of the Platform constituted their agreement to Dutchie's use of cookies and pixels. Critically, the Privacy Policy made clear that various personal information would be disclosed to third parties for advertising, marketing, and analytics. In fact, Plaintiffs' Complaint acknowledges that "[t]welve of the largest pharmacy providers in the United States send information regarding user's purchases of products such as pregnancy tests, HIV tests, prenatal vitamins, and Plan B to online advertisers." Compl. ¶ 70(c). Here, Dutchie's disclosures foreclose any reasonable expectation of privacy regarding Plaintiffs' interactions with the Platform, including the fact that they are authorized to purchase medical marijuana or made a reservation to potentially do so.

Plaintiffs fail to state a claim for invasion of privacy and their claim should be dismissed without leave to amend.

## IV.    Plaintiffs' Breach of Confidence Claim Should be Dismissed.

To state a claim for breach of confidence under Oregon common law, Plaintiffs must allege an "unauthorized and unprivileged disclosure of confidential information *obtained in a confidential relationship* can give rise to tort damages." *Humphers*, 298 Or. at 717 (emphasis added). In addition, the duty to maintain confidentiality must arise from a "legal source external to the tort claim itself." *A.B. v. Oregon Clinic*, 321 Or. App. 60, 70, 515 P.3d 387 (2022) (quoting *Humphers*, 298 Or. at 719).

Plaintiffs assert that the "confidential relationship between the health care provider and the patient" creates the external legal source imposing on Dutchie a duty to maintain the confidentiality of Plaintiffs' allegedly Sensitive Information. But Dutchie is *not* a medical provider. A fact conceded by Plaintiffs in their Complaint. ¶ 11 ("Dutchie is a technology company that specializes in providing solutions for the cannabis industry."). Therefore, no

PAGE 19 – DEFENDANT DUTCHIE'S MOTION TO DISMISS COMPLAINT

confidential relationship exists between Dutchie and Plaintiffs. Dutchie is not privy to and does not receive Plaintiffs' symptoms, diagnosis or other highly sensitive medical information. And even accepting Plaintiffs demonstrably false characterization of medical marijuana as "health information," other courts have squarely rejected the notion that the mere receipt of confidential information is sufficient by itself to transform an arm's length transaction into a fiduciary or confidential relationship. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1224 (S.D. Fla. 2022)." Absent a confidential relationship, Plaintiffs' claim for breach of confidence cannot stand and because this defect cannot be cured, dismissal should be without leave to amend.

Even if Plaintiffs could plausibly allege a confidential relationship—they cannot—their claim stills fails because Plaintiffs consented to the alleged disclosures. As discussed above, *supra* pp. 4-6, each plaintiff created an account through the Dutchie Platform. Compl. ¶ 92. Account creation required users to agree to Dutchie's Terms and Privacy Policy. By affirmatively consenting to these agreements, Plaintiffs were expressly notified of what information the Platform collects and how such information may be shared. Plaintiffs' informed consent defeats their breach of confidence claim as a matter of law.

## V.    Plaintiffs' Negligence Claim Fails.

To prevail on a negligence claim, a plaintiff must plausibly allege: (1) the defendant's conduct created a foreseeable risk of harm; (2) the risk threatened a legally protected interest; (3) the defendant's conduct was unreasonable in light of that risk; (4) the conduct was a cause-in-fact of the plaintiff's harm; and (5) the plaintiff's injury fell within the class of harms that made the defendant's conduct negligent in the first place. *Piazza ex rel. Piazza v. Kellim*, 271 Or. App. 490, 516, 354 P.3d 698 (2015), aff'd sub nom. *Piazza v. Kellim*, 360 Or. 58, 377 P.3d 492 (2016). Here, Plaintiffs fail to allege facts sufficient to establish duty, breach, or injury. Thus, Plaintiffs' negligence claim is deficient and should be dismissed.

### A.    *No Duty or Breach.*

Plaintiffs allege that Dutchie "negligently omitted to inform Plaintiffs and the Class that

---

it would use their Sensitive Information for marketing purposes, and/or that their Sensitive Information would be transmitted to third parties." Compl. ¶ 183. This is demonstrably false. Dutchie's Privacy Policy conspicuously informed users that their information would be used for marketing purposes and transmitted to third parties.

> **3. SHARING AND DISCLOSURE OF PERSONAL INFORMATION.**
> **Vendors and Service Providers:** To assist us in meeting business operations needs and to perform certain services and functions, we may share Personal Information with vendors and service providers, including providers of hosting services, cloud services, and other information technology services providers, email communication software and email newsletter services, ***advertising and marketing services***, payment processors, customer relationship management and customer support services, and ***analytics services***. Pursuant to our instructions, these parties will access, process, or store Personal Information in the course of performing their duties to us.

*See* Ex. D (emphasis added).

Further, Plaintiffs cannot base a negligence claim on the collection and disclosure of information they consented to being disclosed because no reasonable consumer would have expected the information to be protected.

## B.    *No Injury.*

"[A]ctual loss or damage is an essential element" for a negligence claim and "[t]he mere danger of future harm, unaccompanied by present damage, will not support a negligence action." *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-CV-01159-TL, 2025 WL 692097, at *7 (W.D. Wash. Mar. 4, 2025) (quoting *Leonard v. McMenamins, Inc.*, No. C22-0094-KKE, 2024 WL 4188974, at *6 (W.D. Wash. Sept. 13, 2024)). Plaintiffs must allege that they have suffered an "appreciable, nonspeculative, present injury." *Low v. Linkedin Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012). Plaintiffs' damages allegations are insufficient to meet this standard.

Plaintiffs' allegations that their Sensitive Information diminished in value as a result of Dutchie's conduct is insufficient to state a claim for damages. Compl. ¶ 112. Courts have consistently held that damages for the diminution in value of private information are generally

---

unavailable. *See, e.g., In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) ("Although it's true that each user's information is worth a certain amount of money to Facebook and the companies Facebook gave it to, it does not follow that the same information, when not disclosed, has independent economic value to an individual user."). Courts have relied on the fact that "plaintiffs do not plausibly allege that they intended to sell their . . . personal information to someone else . . . [n]or . . . that someone else would have bought it[.]" *Id.*[7]

Here, Plaintiffs generally allege the disclosure of their information diminished its value. Plaintiffs have not, however, alleged how or why this information has lost value. *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930–32 (N.D. Cal. 2015) ("[C]ourts have found insufficient . . . generalized assertions of economic harm based solely on the alleged value of personal information . . . ."). Nor have Plaintiffs alleged that they would have sold such information regardless. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 784; *see also In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 931–32. In fact, quite the opposite appears to be true. The basis of Plaintiffs' lawsuit is that Dutchie should not have disclosed their information to third parties, due to its highly "sensitive" nature. In other words, Plaintiffs brought this action to *prevent* the disclosure of their alleged Sensitive Information. It is implausible that Plaintiffs would plan to sell this same information. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1090 (N.D. 2023) ("[T]he crux of *this* case concerns Meta's receipt of 'individually identifiable health information,' that plaintiffs apparently do not want Meta or anyone other than their healthcare providers to have.") (emphasis in original).

---

[7] *See also, e.g.*, *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1091 (N.D. 2023) (dismissing claim "[i]n light of the failure to separately allege a benefit of the bargain basis for 'loss of money or property' . . . and in light of the inconsistent allegations regarding how plaintiffs could *and* would participate in a legitimate market for health care information . . . .") (emphasis in original); *Durgan v. U-Haul Int'l Inc.*, No. CV-22-01565-PHX-MTL, 2023 WL 7114622, at *3 (D. Ariz. Oct. 27, 2023) ("Plaintiffs have failed to allege that their ability to participate in that market has been impaired.").

Therefore, Plaintiffs have failed to plausibly allege any damages connected to the purportedly diminished value of their Sensitive Information and therefore, their negligence claim must be dismissed.

## VI.    Plaintiffs Fail to State a Claim for Breach of Implied Contract.

Plaintiffs' breach of implied contract claim fails, as Plaintiffs cannot establish the existence of an implied contract on the terms alleged.

### A.    *No Implied Contract.*

"An implied-in-fact contract, like any other contract, must be founded upon the mutual agreement and intention of the parties." *Moyer v. Columbia State Bank*, 315 Or App 728, 737, 503 P.3d 572 (2021) (internal quotation marks omitted). "Unlike an express contract where an agreement is formed based on words, in an implied contract, the parties' agreement is inferred, in whole or in part, from their conduct." *Id.* at 737–38; *see also Matter of Comp. of Gadalean*, 364 Or. 707, 717 n.3, 439 P.3d 965 (2019) ("This court has explained that a contract implied in fact arises where the natural and just interpretation of the acts of the parties warrants such [a] conclusion."). "A patient's choice to use Defendant as a medical service provider does not indicate an intention to enter into an implied contract for the security of information entered on Defendant's website." *M.R. v. Salem Health Hosps. & Clinics*, No. 6:23-CV-01691-AA, 2024 WL 3970796, at *6 (D. Or. Aug. 28, 2024). Here, Plaintiffs cannot establish that an implied contract was created, as there was no mutual assent.

Plaintiffs fail to allege any conduct by Dutchie that amounts to any agreement to not disclose information to third parties. Plaintiffs merely allege they provided their information in exchange for products and services, and that in return Dutchie agreed to not disclose such information. *See* Compl. ¶ 189–90. Such allegations are insufficient to establish mutual assent. *See, e.g.*, *Stanford Health Care v. Blue Cross Blue Shield of N. Carolina, Inc.*, No. 21-cv-04598-BLF, 2022 WL 195847, at *6 (N.D. Cal. Jan. 21, 2022) (finding that the alleged "verification of benefits and authorization of services" failed to "sufficient[ly] plead mutual assent for an implied contract claim."); *Durgan v. U-Haul Int'l Inc.*, No. CV-22-01565-PHX-MTL, ECF Dkt. 31, at

10–11 (D. Ariz. 2023) (dismissing claim for breach of implied agreement to safeguard PII, stating that "nowhere in the Complaint do Plaintiffs explain the origin of these implied agreement terms."). Plaintiffs do not attempt to explain how these alleged terms arose, or how any conduct by Dutchie establishes agreement to those alleged terms.

Most importantly, and as noted *supra*, Plaintiffs accepted Dutchie's express Terms and Privacy Policy when creating their accounts and during *each* reservation to purchase. These express provisions cover the same subject matter at issue. As such, Plaintiffs cannot reasonably contend that an implied contract existed on *entirely* different terms than these. Further, Plaintiffs have not identified *any* consideration in support of the alleged implied contract. For these reasons, Plaintiffs' breach of implied contract claim fails.

### B.    No Contract Damages.

Plaintiffs allege that, as a result of Dutchie's alleged breach of the implied contract, they "sustained damages." Compl. ¶ 193. Plaintiffs claim that they "would not have used [Dutchie's] services, or would have paid substantially less for those services," had they known their information would be disclosed. *Id.* ¶ 194. But Plaintiffs have failed to identify what services they paid for or would have paid less for. Notably, Plaintiffs do not allege that they paid for *any* services; they only allege that they made reservations to purchase cannabis products at various dispensary retail locations. *Id.* ¶¶ 13, 20-21, 26-27, 31-32, 38-39, 44-45, 50-51. Because Plaintiffs do not allege that they paid Dutchie for any services, they have failed to allege damages for their alleged breach of implied contract claim. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1092 (W.D. Wash. 2024) (no contract damages without payment for services).

## VII.   Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law.

Under Oregon law, unjust enrichment is not a standalone cause of action. *See, e.g.*, *Hornbuckle v. Harris*, 69 Or. App. 272, 278, 686 P.2d 418 (1984) ("[A]n unjust enrichment claim must also allege an underlying ground . . . ."). Here, Plaintiffs have not alleged an underlying basis for their unjust enrichment claim. Because unjust enrichment is a remedy, not

an independent cause of action, Plaintiffs must identify the grounds for seeking such a remedy, which they have failed to do. *See, e.g.*, *Hornbuckle*, 69 Or. App. at 278.

An unjust enrichment claim will also fail where there is an adequate remedy at law. *See, e.g.*, *Alsea Veneer, Inc. v. State*, 318 Or. 33, 36, 862 P.2d 95 (1993) ("Equitable relief does not lie if there is an adequate remedy at law."); *Evergreen W. Bus. Ctr., LLC v. Emmert*, 354 Or. 790, 799, 323 P.3d 250 (2014) ("[E]quitable relief is not available if there is an adequate remedy at law for the same breach or wrong."). Where a contract exists regarding the same subject matter as the dispute, such a contract provides legal remedies that bar a claim for unjust enrichment. *See, e.g.*, *Jet Parts Eng'g, Inc. v. Quest Aviation Supply, Inc.*, No. 15-0539-RSM, 2017 WL 1093205, at *8 (W.D. Wash. 2017). Here, Plaintiffs' legal claims, if viable, would provide sufficient remedies. As such, the unjust enrichment claim is barred because Plaintiffs have not shown the absence of an adequate legal remedy.

Moreover, Plaintiffs bare bones allegations that Dutchie "increase[d] [its] profit margins" through the pixels is insufficient to support their claim, *see* Compl. ¶ 228, particularly given the express language in the Privacy Policy which states "Dutchie does not sell your Personal Information." Indeed, Plaintiffs allege that Dutchie was enriched by saving the costs it reasonably should have expended on marketing. *Id.* ¶ 200. Accordingly, Plaintiffs' claim for unjust enrichment must be dismissed.

## VIII.  Plaintiffs' N.Y. Gen. Bus. Law § 349 Fails as a Matter of Law.

Under the GBL, a court must dismiss Plaintiffs' claim unless Plaintiffs adequately plead "a material deceptive act or practice" that "caused actual . . . harm." *Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892, 897 (1999). Although Plaintiffs broadly assert that Dutchie engaged in unfair or deceptive acts in violation of the New York GBL, they fail to allege either (1) that they suffered actual injury, or (2) that Dutchie's actions caused any such injury. Accordingly, Plaintiffs' New York GBL claim cannot stand.

To sustain a GBL § 349 claim, Plaintiffs must plead "actual injury." *See Stutman v. Chem. Bank*, 709 N.Y.S.2d 892, 896, 731 N.E.2d 608 (2000). "A plaintiff suffers actual injury if,

'on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" *Colpitts v. Growers*, No. 20 CIV. 2487 (JPC), 2023 WL 2752161, at *4 (S.D.N.Y. Mar. 31, 2023). Here, Plaintiffs contend that Dutchie violated the GBL by disclosing their information to third parties "without their knowledge o[r] consent." Compl. ¶ 236–37. The Complaint does not sufficiently allege that any Plaintiff actually purchased a product from Dutchie, let alone that any Plaintiff did not receive the full value for any such purchase. Further, and as discussed *supra*, Plaintiffs affirmatively consented to Dutchie's use of pixel technology on the Platform, and Dutchie's Terms and Privacy Policy provided clear conspicuous notice. Plaintiffs' consent undeniably forecloses any finding of a deceptive act, let alone resulting harm. Therefore, their GBL claim should be dismissed.

## IX.    Plaintiffs K.P. and J.L. Fail to State a Massachusetts Right to Privacy Act Claim.

Under the Massachusetts Right to Privacy Act, Mass. Gen. Laws Ann. ch. 214 § 1B, plaintiffs may pursue a claim based upon a theory of public disclosure of private facts or intrusion upon seclusion, but for either theory must prove the facts gathered or disseminated were of a "highly personal or intimate" nature and that the invasion "resulted in an unreasonable, substantial or serious interference" with plaintiffs' privacy. *Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015). And the invasion must be "both unreasonable *and* substantial or serious." *Wofse v. Horn*, 523 F. Supp. 3d 122, 137 (D. Mass. 2021). Plaintiffs K.P. and J.L have failed to allege either of the two elements of this claim.

First, Plaintiffs have not alleged that Dutchie gathered or disseminated any "highly personal or intimate" facts. As evidenced by the figures in Plaintiffs' Complaint, the advertising technology merely collected record information. Again, Plaintiffs did not identify any specific information that Dutchie collected about them. *See supra*. To the contrary, Plaintiffs acknowledge that the figures are merely exemplars and do not relate to any Plaintiff. Compl. ¶ 94.

Plaintiffs K.P. and J.L have also failed to allege an invasion of privacy that was "both unreasonable and substantial or serious." *Wofse*, 523 F. Supp. 3d at 137. In assessing this factor,

courts "balance the extent to which the defendant violated the plaintiff's privacy interests against any legitimate purpose the defendant may have had for the intrusion." *Clark v. Zwicker & Assocs., P.C.*, No. 22-CV-10931-ADB, 2024 WL 2025568, at *7 (D. Mass. May 7, 2024).

Any alleged intrusion was not highly offensive to a reasonable person. As explained above, Plaintiffs did not have a reasonable expectation of privacy when using Dutchie's Platform. When creating their accounts and during *each* reservation, Plaintiffs were directed to the Terms and Privacy Policy which informed them that their use of the Platform constituted their agreement to Dutchie's use of cookies and pixels. These disclosures foreclose any reasonable expectation of privacy.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims. Plaintiffs' claims rest on speculative injuries and legally unsupported theories, and any further amendment would be futile. Therefore, dismissal with prejudice is warranted.

Dated:  March 30, 2026                    Respectfully submitted,


By:  s/ *Britta E. Warren*
    Britta E. Warren, OSB No. 065441
    britta.warren@bhlaw.com
    **BLACK HELTERLINE LLP**
    805 SW Broadway, Suite 2600
    Portland, OR 97205
    Telephone: (503) 224-5560
    Facsimile: (503) 224-6148

    Daniel E. Rohner**
    drohner@shb.com
    **SHOOK, HARDY &BACON L.L.P.**
    1660 17th Street, Suite 450
    Denver, CO 80202
    Tel: (303) 285-5302
    Fax: (303) 285-5301
    **pro hac vice granted*

    *Attorneys for Defendant Courier Plus, Inc.*
    *d/b/a Dutchie*

PAGE 27 – DEFENDANT DUTCHIE'S MOTION TO DISMISS COMPLAINT

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 9,649 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

BLACK HELTERLINE LLP

By: s/ *Britta E. Warren*
      Britta E. Warren, OSB No. 065441
      (503) 224-5560

      *Attorneys for Defendant Courier Plus, Inc. d/b/a Dutchie*

## CERTIFICATE OF SERVICE

I hereby certify that on the below date, I electronically filed the foregoing:

**DEFENDANT COURIER PLUS, INC. D/B/A DUTCHIE'S MOTION TO DISMISS** with

the Clerk of the Court for the United States District Court for the District of Oregon by using the

CM/ECF system, which will cause service to be issued upon all parties of record who are

participants in the system.

Dated:March 30, 2026.

**BLACK HELTERLINE LLP**


By:  s/ *Britta E. Warren*
Britta E. Warren, OSB No. 065441
(503) 224-5560

*Attorneys for Defendant Courier Plus, Inc. d/b/a Dutchie*

PAGE 1 – CERTIFICATE OF SERVICE